[No. S055790. June 29, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
RICARDO RAMIREZ RIOS, Defendant and Appellant.

## COUNSEL

Jeffrey J. Stuetz, under appointment by the Supreme Court, and Waldemar D. Halka for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez, Holly D. Wilkens, Keith I. Motley, William M. Wood and Sara Gros-Cloren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—On retrial after a prior acquittal of murder, defendant was convicted of voluntary manslaughter for a homicide the jury found to be both unlawful (i.e., neither justified nor excused) and intentional. Defendant asserts, among other things, that the voluntary manslaughter instructions

were prejudicially incomplete because they omitted the voluntary manslaughter "elements" that the killing must have occurred in a heat of passion upon sufficient provocation (hereafter heat of passion or provocation), or in the actual but unreasonable belief in the need for self-defense (hereafter imperfect self-defense). In effect, defendant urges that if the jury believed he committed an intentional, unlawful killing, without provocation or belief in the need to defend himself, it must acquit him of voluntary manslaughter.

We disagree. As we explain, neither heat of passion nor imperfect self-defense is an element of voluntary manslaughter that the People must affirmatively prove beyond reasonable doubt in order to obtain a conviction for that offense. Manslaughter is an unlawful killing without *malice*, the element necessary for the greater offense of murder. Malice may arise when one kills, without legal justification or excuse, and with specific lethal intent or conscious indifference to the likelihood of death. However, provocation and imperfect self-defense, though they do not justify or excuse an intentional or consciously indifferent homicide, mitigate the offense by *negating the murder element of malice*, and thus *limit* the crime to manslaughter. By statute and long-standing case law, an intentional but nonmalicious criminal homicide is *voluntary* manslaughter but no lesser offense.

Accordingly, where murder liability is at issue, evidence of heat of passion or imperfect self-defense bears on whether an intentional or consciously indifferent criminal homicide was malicious, and thus murder, or nonmalicious, and thus the lesser offense of voluntary manslaughter. In such cases, the People may have to prove the *absence* of provocation, or of any belief in the need for self-defense, in order to *establish* the *malice element of murder.*

But malice is *not at issue* upon a charge of voluntary manslaughter; indeed, a manslaughter charge concedes the absence of the murder element of malice. Hence, a conviction of voluntary manslaughter is supported by proof and findings, as here, that the homicide was unlawful and intentional. There is no additional need for the prosecution to establish that malice was lacking by reason of provocation or a belief in the need for self-defense.

The Court of Appeal was therefore correct in affirming defendant's voluntary manslaughter conviction against this challenge. No reason appears to address the remaining arguments raised by defendant, or to disturb the Court of Appeal's conclusion that these contentions also lack merit. We will therefore affirm the judgment of the Court of Appeal.

FACTS

Defendant's conviction arises from the fatal shooting of Anthony Reed on June 20, 1994. Defendant was originally charged with murder (Pen. Code,

§ 187, subd. (a)),[1] with personal use of a firearm (§ 12022.5, subd. (a)). Trial on the original information began in March 1995. On April 7, 1995, the jury found defendant not guilty of murder and deadlocked on voluntary manslaughter as a lesser included offense of murder. A mistrial was declared.

An amended information charged defendant with voluntary manslaughter (§ 192, subd. (a)), in that he "willfully, unlawfully, and without malice" killed Reed. It was alleged that the offense was committed with personal use of a firearm. The amended information also charged assault with a semiautomatic firearm (§ 245, subd. (b)), with allegations of personal firearm use and great bodily injury (§ 12022.7, subd. (a)). Finally, the amended information charged involuntary manslaughter (§ 192, subd. (b)) on the misdemeanor-manslaughter theory of brandishing a firearm (§ 417, subd. (a)(2)). A personal-firearm-use allegation was attached to this charge as well.

Trial on the amended information, with a maximum charge of voluntary manslaughter, began in December 1995. There was no dispute that during a street argument, a handgun held by defendant discharged and killed Reed, who had hurled homosexual epithets at defendant and his friend. The issue was the exact circumstances in which the fatal wound was inflicted.

Melvin Mahone testified that on the evening of June 20, 1994, he and Reed were walking together on Lincoln Avenue in San Diego. Both men had been drinking.[2] They saw defendant and Steven Elliott next to a parked car. Reed and Mahone, who believed Elliott appeared homosexual, began shouting that they hated "fucking faggots." At first, defendant and Elliott ignored the taunts and walked toward defendant's residence. But the name-calling continued, and when defendant and Elliott reached defendant's front porch, defendant returned threats and insults. Defendant and Elliott then entered defendant's house, and Reed and Mahone walked away across the street. As they did so, defendant and Elliott reappeared, defendant with his hand behind his back. Defendant approached Reed and Mahone, who also walked toward defendant, and defendant and Reed began arguing at close range. Mahone saw Elliott, who was standing by a parked car, and insulted him again as Elliott entered the car and left. Defendant pulled a handgun from behind his back and held it at his side, pointed toward the ground. Reed told defendant, "You ain't going to do anything with that." In response, defendant raised the gun and fired a shot into the air, then pointed the weapon

---

[1] All further unlabeled statutory references are to the Penal Code.

[2] The autopsy on Reed, the homicide victim, disclosed a blood-alcohol level of .25 percent. Defendant presented expert testimony that this alcohol level would interfere with the subject's physical coordination, and would cause the subject to be more aggressive and violence prone, and to take greater risks.

directly at Reed's face. Mahone backed up and told Reed they should leave, but Reed would not retreat. Reed threw his hands into the air and said, "Just pop me if you're going to pop me." Defendant then shot Reed in the right eye.

Several neighbors heard the confrontation and came outside. Sheldon Kochel could not see the street from his backyard, but he heard defendant, in a calm voice, tell others, who seemed enraged, to move on. After a pause, Kochel heard further vulgar threats and insults, apparently from Reed and Mahone, then two shots.

Loren Matthews and Sonia Garibay also emerged from their house. Reed and defendant were arguing chest-to-chest, with Mahone standing nearby. When defendant told Reed, "I am going to wipe the streets with your face," Reed put out his hands with his palms up; defendant then pulled out his gun and fired into the air. Though Mahone stepped back, Reed refused to retreat, and within seconds, defendant fired a second shot into Reed's face. Reed fell straight backwards.

Matthews had not seen Reed reach for defendant's gun, but according to Matthews, there was a lot of "arm motion going on," and he could not be sure Reed made no lunge. Garibay also did not see Reed grab for defendant's gun, but she admitted she had made statements to a 911 operator suggesting that her view was obstructed and that she heard, but did not see, the second shot.

Immediately after the shooting, defendant asked for someone to call 911, and Garibay did so. Meanwhile, defendant fled down an alley, where he met Michael Toscano, another neighbor. Defendant handed Toscano a handgun and asked Toscano to hide it. Police obtained the gun from Toscano the next day. It was a semiautomatic nine-millimeter pistol, compatible with the single nine-millimeter shell casing found at the shooting scene.

When recovered, the gun had an expended shell casing jammed in the chamber. During test-firings of the weapon, it was necessary after each shot to push the slide mechanism into position by hand before another round could be fired. Automatic safeties also prevented the gun from firing unless the trigger was pulled, and the effort required to pull the trigger was greater than normal.

A prosecution firearms expert testified that a gunshot wound to the brain generally causes the victim to fall in the direction he was leaning or moving at the moment the bullet struck. According to the expert, the position of

Reed's body, lying on its back, was inconsistent with the theory that Reed was leaning or moving toward defendant when he was shot.

In his own behalf, defendant testified as follows: He carried a handgun for protection when outside at night, because crimes had been committed in the neighborhood. On June 20, 1994, Elliott was returning a stereo component. Just as Elliott and defendant finished moving the stereo unit from Elliott's car to a couch inside defendant's front door, defendant saw Reed and Mahone approach, and heard them utter homosexual slurs. Defendant told the two men, who appeared intoxicated, to leave, but Reed responded with a threat, and with his companion came into defendant's front yard. The group moved into the street, where Reed continued his verbal abuse, and Mahone shoved Elliott. Defendant again ordered Mahone and Reed to leave, but they came toward him, issuing vulgar insults and threats that included the words "pop" and "cap," which defendant understood to mean "kill." Defendant believed, based on their dress and language, that Reed and Mahone were gang members, and defendant suspected they were armed. Reed came face-to-face with defendant, and both Reed and Mahone made physical contact with him. Defendant then drew his gun from his waistband and fired a warning shot, hoping it would bring help from the neighbors. Within seconds, Reed lunged at defendant in an attempt to take the gun, all the while saying, "pop, pop, pop." The gun discharged, killing Reed.

The prior testimony of Elliott, who had died after the first trial, was read into the record. According to Elliott, Reed and Mahone began their insults just as Elliott and defendant had deposited the stereo unit in defendant's house and were walking to their separate cars to leave on another errand. Defendant calmly told the two men to be on their way, and both he and Elliott continued to their vehicles. However, Reed and Mahone backtracked toward defendant. As they advanced, Mahone's fists were raised, and Reed issued a taunt. Defendant "took [a] stance" in the middle of the street and put his hand behind his back. Reed, now "right in [defendant's] face," said, " 'If you're going to shoot, go ahead,' " and " 'go ahead and pop, pop, pop, pop, pop.' " Defendant suddenly brought his hand from behind his back, raised a gun, and fired a shot straight upward. While defendant still had his weapon in that position, Reed jumped at defendant, waving his arms and saying, "pop, pop, pop." A second shot rang out.[3]

The jury was instructed that manslaughter is "the unlawful killing of a human being *without malice aforethought*," and is of two kinds, voluntary

---

[3]Elliott did not testify that he was personally assaulted, as defendant claimed.

and involuntary. (Italics added; see § 192; CALJIC No. 8.37.)[4] The voluntary manslaughter instruction was in the standard form of CALJIC No. 8.40 (1989 rev.). This instruction stated that "[e]very person who *unlawfully* kills . . . *without malice* but with an *intent to kill,* is guilty of voluntary manslaughter." It further declared that to establish voluntary manslaughter, the People must prove "1. [a] human being was killed, [¶] 2. [t]he killing was unlawful, and [¶] 3. [t]he killing was done with an intent to kill." Finally, the voluntary manslaughter instruction advised, a homicide was unlawful if it was neither justifiable nor excusable, and the prosecution had the burden of proving the absence of justification or excuse beyond reasonable doubt.

The jury was also instructed on involuntary manslaughter, defined as "an unlawful killing without malice aforethought and without an intent to kill." (CALJIC No. 8.45.) Two theories of involuntary manslaughter were presented, i.e., that the killing occurred (1) during the commission of an inherently dangerous misdemeanor (brandishing), or (2) during the commission of an act, "ordinarily lawful, which involves a high degree of risk of death or great bodily harm, without due caution and circumspection." (*Ibid.*) For this purpose, the phrase "without due caution and circumspection" was defined as "aggravated, reckless and gross" negligence constituting indifference to life. (See CALJIC No. 8.46 ["aggravated, reckless and flagrant"].)

Other instructions defined the justifiable and excusable forms of homicide. Justifiable homicide was defined as a killing in reasonable self-defense. (CALJIC Nos. 5.30, 5.31, 5.50, 5.52.) The self-defense instructions explained, among other things, that one need not retreat from an attack, but may stand and defend oneself with all force and means appropriate against the degree of injury the attack reasonably appears to threaten. Excusable homicide was defined as an unintentional killing by accident or misfortune in the performance of a lawful act, by lawful means, with the exercise of due care. (CALJIC No. 5.00.)

The jury convicted defendant of voluntary manslaughter and assault with a semiautomatic firearm. It also found true the firearm-use and great bodily injury allegations attached to these charges. The court sentenced defendant to state prison for the middle term of six years on the manslaughter count and the upper term of five years for the related firearm-use allegation, for a total of 11 years. Pursuant to section 654, terms for the assault and its related enhancements were imposed but stayed.

On appeal, defendant raised multiple contentions, including a claim that the trial court erroneously failed to instruct on the voluntary manslaughter

---

[4]The instructions omitted as irrelevant any reference to the third statutory category of manslaughter, vehicular manslaughter. (§ 192, subd. (c).)

elements of heat of passion and imperfect self-defense. The Court of Appeal, Fourth Appellate District, Division One, rejected all of defendant's arguments and affirmed the judgment.

With respect to the elements issue, the Court of Appeal reasoned as follows: Even if provocation were an element of voluntary manslaughter, its instructional omission did not require reversal. Under similar circumstances, *People v. McFarlane* (1903) 138 Cal. 481 [71 P. 568] (*McFarlane*) upheld as harmless an instruction that if the jury believed the defendant guilty of murder (of which he was acquitted in a prior trial), it should convict him of manslaughter. *McFarlane* noted that manslaughter, as an included offense, is "necessarily involved" in any murder, "and it is immaterial how the murder is perpetrated." (*McFarlane, supra,* at p. 487.) As a general rule, the defendant cannot complain of a verdict more favorable to him than the evidence warranted. Moreover, heat of passion has a unique legal function. Unlike most crime elements, it does not establish or increase criminal culpability, but mitigates an intentional, unlawful homicide, otherwise murder, to a lesser offense. For this reason, provocation "closely resembles an affirmative defense" on which evidence is ordinarily presented by the accused, not the People. (*People v. Barton* (1995) 12 Cal.4th 186, 199 [47 Cal.Rptr.2d 569, 906 P.2d 531] (*Barton*).) Thus, far from lightening the prosecution's burden, the instant voluntary manslaughter instruction required the People to prove the greater offense of murder, while it absolved defendant from producing evidence of provocation in order to reduce the offense to manslaughter. Accordingly, any error was harmless.

We granted defendant's petition for review. The petition, and the briefs in this court, reassert several of the arguments that were raised and rejected below. However, we consider only one—defendant's claim that his voluntary manslaughter conviction must be reversed because the instruction on that offense omitted the elements of provocation and imperfect self-defense.[5] Like the Court of Appeal, we conclude that this contention lacks merit.

---

[5] The petition for review, and the briefs on the merits, additionally argue defendant's claims that his manslaughter and assault convictions are barred by double jeopardy, that the jurors committed prejudicial misconduct that he was not allowed to investigate fully, and that his trial counsel was ineffective in various respects. No reason appears to disturb the Court of Appeal's conclusions on these matters. We may, of course, confine our decision to fewer than all issues decided by the Court of Appeal, and raised by the petition for review, even where we did not advise the parties to limit their briefing or argument accordingly. (Cal. Rules of Court, rule 29.2(a); see Advisory Com. com., 23 pt. 1 West's Ann. Codes, Rules (1996 ed.) foll. rule 29.2, p. 315.)

## DISCUSSION

California statutes have long separated criminal homicide into two classes, the greater offense of murder and the lesser included offense of manslaughter. The distinguishing feature is that murder includes, but manslaughter lacks, the element of malice. (Compare § 187, subd. (a) ["[m]urder is the unlawful killing of a human being . . . with malice aforethought"] with § 192 ["[m]anslaughter is the unlawful killing of a human being without malice"].)

Malice exists, if at all, only when an unlawful homicide was committed with the "intention unlawfully to take away the life of a fellow creature" (§ 188), or with awareness of the danger and a conscious disregard for life (*ibid.*; *People v. Whitfield* (1994) 7 Cal.4th 437, 450 [27 Cal.Rptr.2d 858, 868 P.2d 272]; see also *People v. Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279] ["wanton disregard for human life"]).[6] In certain circumstances, however, a finding of malice may be precluded, and the offense limited to manslaughter, even when an unlawful homicide *was* committed with intent to kill. In such a case, the homicide, though not murder, can be no less than voluntary manslaughter.

On several recent occasions, we have explained the relationship between murder and manslaughter, as applied to intentional and unlawful killings. " 'Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter. (§ 192.)' (. . . *Barton*[, *supra*,] 12 Cal.4th 186, 199. . . .) Generally, the intent to unlawfully kill constitutes malice. (§ 188; *People* v. *Saille* (1991) 54 Cal.3d 1103, 1113 [2 Cal.Rptr.2d 364, 820 P.2d 588] [(*Saille*)]; see *In re Christian S.* (1994) 7 Cal.4th 768, 778-780 [30 Cal.Rptr.2d 33, 872 P.2d 574] (*Christian S.*).) 'But a defendant who intentionally and unlawfully kills [nonetheless] lacks malice . . . when [he] acts in a "sudden quarrel or heat of passion" (§ 192, subd. (a)), or . . . kills in "unreasonable self-defense"—the unreasonable but good faith belief in having to act in self-defense [citations].' (*Barton, supra,* 12 Cal.4th at p. 199.)" (*People v.*

---

[6]Not all murder requires the People to prove the defendant killed intentionally or with conscious disregard for life. Under the felony-murder rule, a homicide is murder when it occurs in the course of certain serious and inherently dangerous felonies (§ 189 [first degree felony murder]; see, e.g., *People v. Patterson* (1989) 49 Cal.3d 615, 626 [262 Cal.Rptr. 195, 778 P.2d 549] (*Patterson*) [nonstatutory second degree felony murder].) In such cases, the intent to commit a dangerous felony that actually results in death is substituted for malice, thus establishing the extent of culpability appropriate to murder. (*Patterson, supra,* 49 Cal.3d at p. 626; see also *People v. Dillon* (1983) 34 Cal.3d 441, 474-476 [194 Cal.Rptr. 390, 668 P.2d 697].) The felony-murder doctrine is not pertinent to the discussion here.

*Breverman* (1998) 19 Cal.4th 142, 153-154 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (*Breverman*); see also *People v. Blakeley* (2000) 23 Cal.4th 82, 88, 90 [96 Cal.Rptr.2d 451, 999 P.2d 675] (*Blakeley*); *People v. Lasko* (2000) 23 Cal.4th 101, 107-108 [96 Cal.Rptr.2d 441, 999 P.2d 666] (*Lasko*); *People v. Lee* (1999) 20 Cal.4th 47, 58-59 [82 Cal.Rptr.2d 625, 971 P.2d 1001] (*Lee*).)[7]

These mitigating circumstances reduce an intentional, unlawful killing from murder to voluntary manslaughter "by *negating the element of malice* that otherwise inheres in such a homicide [citation]." (*Breverman, supra,* 19 Cal.4th 142, 154, italics in original). *Provocation* has this effect because of the words of section 192 itself, which specify that an unlawful killing that lacks malice because committed "upon a sudden quarrel or heat of passion" is voluntary manslaughter. (*Id.,* subd. (a).) *Imperfect self-defense* obviates malice because that most culpable of mental states "cannot coexist" with an actual belief that the lethal act was necessary to avoid one's own death or serious injury at the victim's hand. (*People v. Flannel* (1979) 25 Cal.3d 668, 675 [160 Cal.Rptr. 84, 603 P.2d 1] (plur. opn. of Tobriner, J.) (*Flannel*); see also *id.,* at pp. 686-687 (conc. opn. of Richardson, J.); *Christian S., supra,* 7 Cal.4th 768, 777-780.) Because one who kills unlawfully and intentionally, but lacks malice, is guilty of voluntary manslaughter, "[intentional] voluntary manslaughter . . . is considered a lesser necessarily included offense of intentional murder." (*Breverman, supra,* 19 Cal.4th 142, 154; *Barton, supra,* 12 Cal.4th 186, 200-201.)[8]

Thus, where the defendant killed intentionally and unlawfully, evidence of heat of passion, or of an actual, though unreasonable, belief in the need for self-defense, is relevant only to determine whether *malice has been established,* thus allowing a conviction *of murder,* or *has not been established,* thus precluding a murder conviction and limiting the crime to the lesser included offense of voluntary manslaughter. Indeed, in a murder case, unless the People's own evidence suggests that the killing may have been provoked or in honest response to perceived danger, it is the *defendant*'s obligation to proffer some showing on these issues sufficient to raise a

---

[7]In *Blakeley* and *Lasko,* we recently stated that specific intent to kill is not a necessary element of voluntary manslaughter. (*Blakeley, supra,* 23 Cal.4th at p. 88; *Lasko, supra,* 23 Cal.4th at p. 108.) However, we meant only to make clear that voluntary manslaughter, but no lesser offense, is *also* committed when one kills unlawfully, and with *conscious disregard for life,* but lacks malice because of provocation or imperfect self-defense. (*Blakeley, supra,* 23 Cal.4th at pp. 90-91; *Lasko, supra,* 23 Cal.4th at pp. 108-110.)

[8]"Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073].)

reasonable doubt of his guilt of murder. (§ 189.5, subd. (a); *People v. Sedeno* (1974) 10 Cal.3d 703, 719 [112 Cal.Rptr. 1, 518 P.2d 913] *(Sedeno)*; *Jackson v. Superior Court* (1965) 62 Cal.2d 521, 526 [42 Cal.Rptr. 838, 399 P.2d 374]; *People v. Bushton* (1889) 80 Cal. 160, 164 [22 P. 127]; see also *Barton, supra,* 12 Cal.4th 186, 199.)

If the issue of provocation or imperfect self-defense is thus "properly presented" in a murder case *(Mullaney v. Wilbur* (1975) 421 U.S. 684, 704 [95 S.Ct. 1881, 1892, 44 L.Ed.2d 508]), the *People* must prove *beyond reasonable doubt* that these circumstances were *lacking* in order to establish the murder element of malice. *(Id.,* at pp. 703-704 [95 S.Ct. at p. 1892]; *People v. Bloyd* (1987) 43 Cal.3d 333, 349 [233 Cal.Rptr. 368, 729 P.2d 802].) California's standard jury instructions have long so provided. (See CALJIC No. 8.50.) In such cases, if the fact finder determines the killing was intentional and unlawful, but is not persuaded beyond reasonable doubt that provocation (or imperfect self-defense) was absent, it should acquit the defendant of murder and convict him of voluntary manslaughter. *(People v. Dewberry* (1959) 51 Cal.2d 548, 556-557 [334 P.2d 852]; see *Lee, supra,* 20 Cal.4th 47, 81-82 (conc. & dis. opn. of Kennard, J.); see also CALJIC No. 8.72.)

Provocation and imperfect self-defense therefore cannot be elements of voluntary manslaughter when murder and voluntary manslaughter are under joint consideration. Were it otherwise, the prosecution would face irreconcilable requirements, where provocation or imperfect self-defense was at issue, to obtain an appropriate conviction. On the one hand, the People would have to prove, beyond reasonable doubt, the *absence* of these factors in order to establish the greater offense, but on the other hand, would have to prove their *presence* beyond reasonable doubt to establish the lesser one. A fact finder doubtful that provocation or imperfect self-defense was lacking, but also not persuaded beyond reasonable doubt that either was present, could convict the defendant of *neither* murder *nor* voluntary manslaughter, even though it found the defendant had killed intentionally, without justification or excuse. Such a result would turn the law of criminal homicide on its head.[9]

It equally follows that provocation and imperfect self-defense are not elements of voluntary manslaughter when, as here, the defendant faces

---

[9]Nor is it satisfactory to suggest that where intent to kill is clear, but provocation or imperfect self-defense is uncertain, the defendant should be convicted of mere *involuntary* manslaughter for a fatal act committed "without due caution and circumspection." (§ 192, subd. (b).) As the statutes and cases suggest, murder and *voluntary* manslaughter are the appropriate offenses for those who kill intentionally. If involuntary manslaughter were the only available alternative to murder for an intentional criminal homicide unless provocation or imperfect self-defense was proved beyond doubt, an unacceptable anomaly would arise. Where it was clear that an intentional killer had been provoked, or had acted in the honest

only that charge. Heat of passion or imperfect self-defense *precludes* a finding of malice *where malice is an element of the charge*, but *malice is not at issue* upon a charge of manslaughter. The charge of voluntary manslaughter *absolves* the People of proving that malice was present. It does not require the prosecution to establish, beyond reasonable doubt, that *malice was absent*. (See text discussion, *ante*; see also *People v. Wynn* (1968) 257 Cal.App.2d 664, 673 [65 Cal.Rptr. 210] (*Wynn*) [charge of manslaughter concedes that prosecution's proof would show only that offense].) The possibility that the defendant killed with malice, and thus committed the greater offense of murder, does not prevent a conviction of voluntary manslaughter, a lesser included offense which does not require proof of malice.[10]

Accordingly, a conviction of voluntary manslaughter can be sustained under instructions which require, and evidence which shows, that the defendant killed intentionally and unlawfully. Standard California jury instructions, from which the instructions given in this case were closely adapted, have so provided for a quarter of a century. (See CALJIC No. 8.40.) The People need not further prove beyond reasonable doubt, as an element of the manslaughter offense, that the defendant was provoked or unreasonably sought to defend himself.

though unreasonable belief in the need for self-defense, he would suffer conviction of the *greater* offense of *voluntary* manslaughter. On the other hand, an intentional killer who might be more culpable because his claims of provocation or imperfect self-defense, though sufficient to raise reasonable doubts of murder, were not proved beyond doubt could only be convicted of the lesser, *involuntary* form of manslaughter. Such an anomaly is an additional significant reason to conclude that provocation or imperfect self-defense need not be proved beyond reasonable doubt in order to convict an intentional killer of voluntary manslaughter. (Cf. *Christian S., supra*, 7 Cal.4th 768, 780, fn. 4.)

[10]Of course, in a murder trial, the court, on its own motion, must fully instruct on every theory of a lesser included offense, such as voluntary manslaughter, that is supported by the evidence. (*Breverman, supra*, 19 Cal.4th 142, 153-164.) Hence, where the evidence warrants, a murder jury must hear that provocation or imperfect self-defense negates the malice necessary for murder and reduces the offense to voluntary manslaughter. By the same token, a murder defendant is not *entitled* to instructions on the lesser included offense of voluntary manslaughter if evidence of provocation or imperfect self-defense, which would support a finding "that the offense was less than that charged," is lacking. (*Sedeno, supra*, 10 Cal.3d 703, 715; see also *People v. Waidla* (2000) 22 Cal.4th 690, 739-740 [94 Cal.Rptr.2d 396, 996 P.2d 46]; *Flannel, supra*, 25 Cal.3d 668, 684-685 & fn. 12.) But where the "offense . . . charged" is the lesser included crime of voluntary manslaughter, and an unlawful, intentional homicide is shown, the prosecution is not further obligated to prove that the defendant was provoked or acted in an unreasonable effort at self-defense, thereby negating the possibility that the greater inclusive offense of murder was committed. Because a greater inclusive offense "cannot be committed without also committing [a] lesser [offense necessarily included therein]" (*People v. Birks, supra*, 19 Cal.4th 108, 117), facts that would support a conviction of the greater offense necessarily allow a conviction of the lesser. (See *Lee, supra*, 20 Cal.4th 47, 67 (conc. opn. of Brown, J.); see also discussion, *post*.)

Defendant concedes that existing law supports this result. However, he urges we reexamine the issue and conclude that voluntary manslaughter is a separate and distinct offense, not included in murder, of which provocation and imperfect self-defense are necessary alternative elements. **(5)** Under defendant's novel approach, provocation and imperfect self-defense do not negate the malice of an intentional, unlawful killing, thus reducing the homicide from murder to the included offense of voluntary manslaughter. Instead, he suggests, *all* intentional, unlawful homicides *are malicious*, but the law simply defines a separate crime and lesser punishment when the additional elements of provocation or imperfect self-defense are present. We are not persuaded.[11]

Defendant first relies on isolated language in *Barton, supra,* 12 Cal.4th 186. There we explained that voluntary manslaughter arising from either provocation or imperfect self-defense "is not a [mere] defense [to murder] but a crime" in its own right. (*Id.,* at p. 200.) But the cited passage of *Barton* had nothing to do with the issue before us in this case, and nothing in *Barton* is inconsistent with our analysis here.

*Barton* considered the California rule requiring sua sponte instructions on both *defenses* and *lesser included offenses* to the charged crime. As *Barton* explained, even where substantial evidence supports a *defense* to the charge, sua sponte instructions thereon are not required if they appear inconsistent with the defendant's trial theory. (*Barton, supra,* 12 Cal.4th 186, 195.) On the other hand, the court must instruct on all lesser included *offenses* supported by the evidence even over the defendant's objection. (*Id.,* at pp. 195-196.) *Barton* acknowledged that in a murder trial, voluntary manslaughter "closely resembles an affirmative defense" because "it is [ordinarily] the defendant [who] offers evidence" of provocation or imperfect self-defense to show the crime was not murder. (*Id.,* at p. 199.) Moreover, *Barton* conceded, *imperfect self-defense* in particular seems quite similar to the complete homicide defense of "true self-defense." (*Ibid.*)

Nonetheless, *Barton* affirmed that in its relationship to murder, voluntary manslaughter "is not a defense but a crime; *more precisely, it is a lesser offense included in the crime of murder.*" (*Barton, supra,* 12 Cal.4th 186, 200-201, italics added.) This is so because one who kills intentionally and unlawfully, but with provocation or in imperfect self-defense, lacks malice, the element that distinguishes murder from manslaughter, and "[a] defendant who commits an intentional and unlawful killing but who lacks malice is guilty [not of murder, but] of the lesser included offense of voluntary manslaughter. (§ 192.)" (*Id.,* at p. 199.) In context, *Barton*'s reasoning and result thus support, rather than undermine, the analysis we adopt in this case.

---

[11]Defendant's counsel developed this argument fully for the first time at oral argument.

Defendant points out that section 192, subdivision (a) specifically defines "[v]oluntary" manslaughter as arising "upon a sudden quarrel or heat of passion," while the concepts of provocation and imperfect self-defense appear nowhere in the statutes defining murder. Therefore, he urges, heat of passion and imperfect self-defense must be elements of the distinct offense of voluntary manslaughter.

Of course, section 192 offers no support for defendant's view in relation to imperfect self-defense. This judicially developed theory of voluntary manslaughter is not expressed in the statutory scheme at all. Instead, as indicated above, it arises from the more fundamental recognition that manslaughter is a killing which, though criminal, *lacks the murder element of malice*. The premise is that even if a homicide was intentional, and is not legally justified on grounds of reasonable necessity, malice, that most culpable mental state which distinguishes murder, simply "cannot coexist" with the defendant's actual belief that the lethal act was necessary for self-protection. (*Flannel, supra*, 25 Cal.3d 668, 675.) This reasoning applies equally to provocation.

Moreover, when the language of section 192 itself is examined in context, it does not support defendant's construction of the provocation doctrine. Sections 187 and 188 first establish the principle that *murder* is an unlawful killing *with malice*. Section 192 then distinguishes "[m]anslaughter" as "an unlawful killing . . . *without malice*." (Italics added.) After thus establishing the uniform principle that manslaughter is a criminal homicide *without the murder element of malice*, section 192 sets forth three basic circumstances in which an unlawful homicide will be deemed nonmalicious and specifies the form of manslaughter conviction appropriate in each. Subdivision (a) of section 192 establishes that if malice is lacking because the killer acted "upon a sudden quarrel or heat of passion," the offense will be "[v]oluntary" manslaughter. Section 192 thus confirms, rather than contradicts, the long-established principle that the role of provocation is simply to negate malice and thereby reduce a homicide from murder to voluntary manslaughter.

That this was always the Legislature's intent is further indicated by section 189.5, a statute of equal vintage. By its literal language, section 189.5, subdivision (a) provides that in a murder case, the People satisfy their burden by proving the defendant's commission of the homicide, after which the *defendant* has the burden of "proving circumstances of mitigation, or that justify or excuse it," such as proof "that the crime committed *amounts only to manslaughter*." (Italics added.) Thus, as adopted, section 189.5, subdivision (a) contemplates that the circumstances which differentiate manslaughter from murder are *mitigating factors in a murder prosecution*, not distinct

elements which the *People* must prove in order to convict the defendant of the lesser offense.[12]

Defendant insists that subdivision (a) of section 192, describing voluntary manslaughter, must be read in pari materia with subdivisions (b) and (c), which describe involuntary and vehicular manslaughter respectively. Manifestly, he urges, these latter subdivisions do not operate by negating malice; instead, they describe distinct homicide crimes arising *irrespective of* the mental states necessary for malice—intent to kill or conscious disregard for life. By analogy, he urges, subdivision (a) cannot be interpreted as negating the murder element of malice. On the contrary, he suggests, subdivision (a) describes a distinct form of criminal homicide, characterized by the peculiar statutory element of provocation (or the nonstatutory element of imperfect self-defense), which also arises *irrespective of malice.*

Defendant's theory is not convincing. The express fundamental premise of section 192 is that manslaughter is an "unlawful killing . . . *without malice.*" (Italics added.) In its several subdivisions, the statute then describes various forms of homicide that are nonmalicious, but nonetheless unlawful, and thus constitute the crime of manslaughter.

None of the subdivisions state *why malice is absent* from the killings described; in all cases, that principle must be inferred. The killings described in section 192, subdivision (b), addressing involuntary manslaughter, and subdivision (c), addressing vehicular manslaughter, qualify as criminal because they arise from unlawful acts (other than felonies), or lawful acts performed in an unlawful manner, or gross negligence, or some combination of these factors. But they are nonmalicious, and thus only manslaughter, because they do not involve specific intent to kill or conscious disregard for life. (See § 188.)

On the other hand, subdivision (a) of section 192 describes as *voluntary* manslaughter all homicides that occurred "upon a sudden quarrel or heat of passion." The obvious inference is that this mitigating circumstance renders

---

[12]Constitutional considerations prevent literal application of section 189.5, subdivision (a) in several respects. Because the due process clauses require the *People* to shoulder the burden of *proof* on all guilt-related issues, we have long held, as noted above, that a murder defendant need only point to evidence raising a *reasonable doubt* he committed that crime, as opposed to some lesser homicide offense. Similarly, under modern constitutional doctrine requiring the prosecution to prove all the elements of the charged offense, the People cannot obtain a murder conviction without submitting evidence which would permit a finding beyond reasonable doubt that the homicide was malicious. (E.g., *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1214-1215 [275 Cal.Rptr. 729, 800 P.2d 1159]; but see, e.g., *People v. Lines* (1975) 13 Cal.3d 500, 506 [119 Cal.Rptr. 225, 531 P.2d 793] [where prosecution proves defendant committed homicide, and nothing further is shown, law presumes malice].)

such a homicide an "unlawful killing . . . without malice" (§ 192), and thus reduces the offense to the "[v]oluntary" form of manslaughter (*id.*, subd. (a)), *even though* the lethal act was committed with a mental state, such as intent to kill, which would otherwise justify a finding of malice. In other words, as California law has long specified, where a killing was intentional and unlawful, provocation justifies a voluntary manslaughter conviction not because provocation is an additional element of that crime, but because it *negates* the *malice* element of the greater offense of murder.

Defendant suggests that as a result of more recent legislative action, we can no longer say heat of passion or imperfect self-defense negates the malice otherwise established by an intentional and unlawful killing. In a confusing argument, he asserts that the Legislature's 1981 amendment to section 188 eliminated all distinction between the mental states of intent to kill and conscious disregard for life, on the one hand, and malice on the other. Hence, he reasons, voluntary manslaughter can now only be understood as a separate offense characterized by the distinct affirmative features of heat of passion or imperfect self-defense.

However, as indicated above, the principle that provocation and imperfect self-defense *negate the murder element of malice*, and thus *reduce* an otherwise malicious homicide from murder to the nonmalicious offense of voluntary manslaughter, is well established. Moreover, nothing in that theory is inconsistent with the 1981 amendment to section 188. The 1981 amendment provided that "no other" mental state, beyond intent to kill or conscious disregard for life, is necessary to *establish* malice. (Stats. 1981, ch. 404, § 6, p. 1593.) In particular, the amendment overruled prior case law suggesting that malice additionally required both "an awareness of the obligation to act within the general body of laws regulating society" and a contravening act done "despite such awareness." (*Saille, supra,* 54 Cal.3d 1103, 1113.) In *Saille,* we concluded that the 1981 amendment thus ended a defendant's previously recognized ability to reduce a murder to nonstatutory voluntary manslaughter on the basis of voluntary intoxication or mental disorder. (*Id.,* at pp. 1112-1117.)

However, the 1981 amendment had nothing to do with the traditional relationship between murder and voluntary manslaughter, *as differentiated by provocation or imperfect self-defense.* (See *Christian S., supra,* 7 Cal.4th 768, 777-778 [holding that 1981 amendment did not eliminate imperfect self-defense].) The amendment contained no express or implicit attack upon the principle, already then extant (see, e.g., *Flannel, supra,* 25 Cal.3d 668, 677), that provocation and imperfect self-defense negate malice, "so as to reduce murder to manslaughter" (*ibid.*). Nor has the Legislature since challenged

this doctrine, though the case law has reaffirmed it on many more recent occasions.

A number of decisions have stated that provocation is an element of voluntary manslaughter, or that voluntary manslaughter requires affirmative proof of heat of passion. (See, e.g., *Sedeno, supra,* 10 Cal.3d 703, 719; *People v. Rhinehart* (1973) 9 Cal.3d 139, 154 [107 Cal.Rptr. 34, 507 P.2d 642]; *People v. Williams* (1969) 71 Cal.2d 614, 624 [79 Cal.Rptr. 65, 456 P.2d 633]; *People v. Spurlin* (1984) 156 Cal.App.3d 119, 123-124 [202 Cal.Rptr. 663]; *People v. Moles* (1970) 10 Cal.App.3d 611, 613 [89 Cal.Rptr. 226]; *People v. Hall* (1970) 5 Cal.App.3d 116, 124 [85 Cal.Rptr. 188]; *People v. Thompson* (1961) 193 Cal.App.2d 620, 627 [14 Cal.Rptr. 512] (*Thompson*); cf. *People v. Lang* (1989) 49 Cal.3d 991, 1017 [264 Cal.Rptr. 386, 782 P.2d 627].) In general, however, the context of these statements makes them entirely inapposite to defendant's claim. With one exception discussed below (see fn. 13, *post*), the examples arise in murder cases and are solely concerned with how issues of provocation or imperfect self-defense might *reduce* an intentional homicide from the charged offense of murder to the lesser included offense of voluntary manslaughter. Most simply consider whether there was sufficient evidence of provocation, or of imperfect self-defense, to *entitle* a *murder* defendant to voluntary manslaughter instructions.

Defendant cites, and we have found, no decision holding that one who commits an intentional criminal homicide *cannot* be convicted of voluntary manslaughter, rather than murder, unless the prosecution further proves beyond reasonable doubt, as an element of the lesser offense, that he killed upon provocation, or in an actual, though unreasonable, belief in the need for self-defense. On the contrary, in every case where an intentional killer argued he was wrongly convicted of voluntary manslaughter without evidence or findings of provocation, or on instructions and proof making out the greater offense of murder, his complaint has been rebuffed.[13]

Defendant urges that he cannot be convicted of one offense, manslaughter, where the the jury was told only the elements of another, murder. We have

---

[13]Analyses of the issue have varied. Just last year, in *Lee, supra,* 20 Cal.4th 47, we rejected a murder defendant's claim that the jury should not have been allowed to convict him of voluntary manslaughter because there was no evidence of provocation. All theories of criminal homicide on which the jury was instructed did require intent to kill. In upholding the voluntary manslaughter conviction, three members of this court applied the rule of *People v. Powell* (1949) 34 Cal.2d 196 [208 P.2d 974], also a murder-manslaughter case, that the defendant cannot complain if convicted of an offense less than that supported by facts the jury indisputably found. This plurality reasoned that because the *Lee* jury necessarily found an intentional killing, which would establish malice and thus murder if nothing more was shown, conviction of the lesser manslaughter offense, even if error, was favorable to the defendant and thus harmless. (*Lee, supra,* at pp. 57-61.) In a concurring opinion, Justice Brown reasoned that because voluntary manslaughter is a lesser included offense of murder, evidence

already explained, however, that such an argument lacks merit. As indicated above, the People must establish malice, including, in appropriate cases, the *absence* of provocation, as an essential element of *murder*. However, they need not prove the absence of malice, the issue to which provocation and imperfect self-defense are relevant, in order to convict the defendant of the lesser included offense of manslaughter. Moreover, if the evidence shows an intentional criminal homicide, but malice is not established, the accused is appropriately convicted of *voluntary* manslaughter. (See discussion and authorities, *ante*.) Hence, defendant was properly convicted of that offense here, though the instructions required no proof of provocation or imperfect self-defense.

For all the reasons set forth above, we hold that a conviction of voluntary manslaughter may be sustained upon proof and findings that the defendant committed an unlawful and intentional homicide. Provocation and imperfect self-defense are not additional elements of voluntary manslaughter

---

sufficient for murder is necessarily sufficient for voluntary manslaughter. (*Id.*, at pp. 66-68.) In a separate concurring and dissenting opinion, Justice Kennard concluded, as we do here, that provocation is not an element of voluntary manslaughter, but is relevant only to determine in a murder case whether the murder element of malice may have been absent, thus reducing the offense to voluntary manslaughter. (*Id.*, at pp. 79-82.) Several of these approaches were also reflected in earlier cases. (See, e.g., *McFarlane, supra*, 138 Cal. 481, 486-487 [after defendant was acquitted of murder in prior trial, there was no prejudice in instructions to second jury that if it found elements of murder, it should return verdict of manslaughter, since manslaughter is lesser offense necessarily included in murder]; *People v. Muhlner* (1896) 115 Cal. 303, 305-306 [47 P. 128] [evidence warranting murder conviction will also support verdict of manslaughter, a necessarily included offense of murder]; *Wynn, supra*, 257 Cal.App.2d 664, 670-674 [where defendant is charged only with voluntary manslaughter for intentional killing, issue of provocation is obviated because charge concedes absence of malice]; *People v. Huntington* (1908) 8 Cal.App. 612, 614 [97 P. 760] [where evidence showed homicide by criminal abortion, and thus murder, but defendant had been previously acquitted of murder, evidence would support conviction for lesser offense of manslaughter, which is included in murder].) In *Thompson, supra*, 193 Cal.App.2d 620, the defendant, charged with murder in the shooting death of his girlfriend, was convicted of voluntary manslaughter as a lesser included offense. On appeal, he argued the voluntary manslaughter conviction was improper because there was no evidence of heat of passion. The Court of Appeal responded that this was "technically correct" (*id.*, at p. 627), and that the "finding of voluntary manslaughter was erroneous" (*ibid.*), but reversal was not required, because where there was proof defendant committed the killing, and nothing more was shown, the evidence warranted a murder conviction, and the defendant could not complain of a more favorable verdict (*id.*, at pp. 627-628). *Thompson*'s comments that it was "technically correct" to say there could be no voluntary manslaughter conviction, and that such a conviction was "erroneous," are ambiguous. If the Court of Appeal meant only that the evidence did not entitle the defendant, charged with murder, to *instructions* on the lesser offense of voluntary manslaughter, its remarks are unobjectionable. But insofar as these passages were intended to convey that a *conviction* of voluntary manslaughter is "technically" impossible and "erroneous" in every case unless there is affirmative proof of provocation (or imperfect self-defense), they are mistaken for the reasons set forth at length in this opinion. To that extent, they are disapproved.

which must be proved and found beyond reasonable doubt in order to permit a conviction of that offense.

Accordingly, the instant trial court did not err by failing to instruct on provocation and imperfect self-defense as elements of voluntary manslaughter. That being so, the Court of Appeal correctly rejected defendant's claim that the instructional omission requires reversal of his conviction. The judgment of the Court of Appeal will therefore be affirmed.

## CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.

MOSK, J.—I concur in the judgment.

I read the opinion of the court to be largely consistent with the substance of my dissenting opinion in *People v. Blakeley* (2000) 23 Cal.4th 82 [96 Cal.Rptr.2d 451, 999 P.2d 675], which anticipated what appears to be its central conclusions.

Thus, murder is the unlawful killing of a human being with malice aforethought, either in its express form as a deliberate and wrongful intent to kill or in its implied form as a wanton disregard for human life.

For its part, manslaughter is the unlawful killing of a human being without malice aforethought. As its conduct or consequences element, voluntary manslaughter has the requirement of an unlawful killing. As its mental state element, voluntary manslaughter has the requirement of a state of mind that amounts in fact to malice aforethought, but is deemed in law not to do so.

Like its voluntary counterpart, involuntary manslaughter has as its conduct or consequences element the requirement of an unlawful killing. But, unlike its voluntary counterpart, involuntary manslaughter (other than in its vehicular form) has as its mental state element the requirement of a state of mind that belongs to any underlying nonfelonious unlawful act, or that attends the commission, in an unlawful manner, of a lawful but potentially deadly act, or that is without due caution and circumspection.

As a matter of law but not of fact, provocation reduces malice aforethought from the more culpable mental state of murder only to the less

culpable one of voluntary manslaughter, and thereby operates to reduce murder only to voluntary manslaughter.

By contrast, as a matter of fact as well as of law, the so-called doctrine of imperfect self-defense[1] may reduce malice aforethought from the more culpable mental state of murder even to the less culpable one of involuntary manslaughter, and may thereby operate to reduce murder even to involuntary manslaughter. Its effect depends on whether, in fact, it precludes malice aforethought—if yes, it results in involuntary manslaughter; if no, it results in voluntary manslaughter. It does not treat intent to kill as material in and of itself. Why it does not do so is plain. The absence of intent to kill does not entail the absence of malice aforethought: a wanton disregard for human life may yet exist. Likewise, the presence of intent to kill does not entail the presence of malice aforethought: a bare intent to kill is not sufficient; one that is both deliberate and wrongful is necessary.

---

[1] Which is a "judicially developed theory" not of voluntary manslaughter narrowly (maj. opn., *ante*, at p. 465) but of manslaughter broadly (see generally *In re Christian S.* (1994) 7 Cal.4th 768, 771, 773-783 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *People v. Flannel* (1979) 25 Cal.3d 668, 672, 674-680 [160 Cal.Rptr. 84, 603 P.2d 1] (lead opn. of Tobriner, J.); *id.* at pp. 686-687 (conc. opn. of Richardson, J.)).