*147 KENNARD, J.,*
Concurring and Dissenting. — Murder requires malice. (Pen. Code, § 187, subd. (a) (all statutory citations are to the Penal Code).) Malice is lacking when a person kills in the reasonable belief that the killing is necessary to avert an imminent threat of death or great bodily injury (self-defense); because the killing is justified, no crime is committed. Malice is also lacking when a person kills in the unreasonable belief that self-defense is necessary, a concept known as “imperfect self-defense”; in that situation the killing is voluntary manslaughter, a lesser offense necessarily included in murder. (In re Christian S. (1994) 7 Cal.4th 768, 111 [30 Cal.Rptr.2d 33, 872 P.2d 574] {Christian S.).) But what crime is committed when the unreasonable belief stems entirely from a delusion caused by a mental disorder? The majority says the crime is murder. I disagree. In my view, the offense is voluntary manslaughter. Although I agree with the majority that the trial court here properly rejected defendant’s request for a jury instruction on voluntary manslaughter based on imperfect self-defense, I do so for different reasons (see pt. Ill, post).
I
In April 2007, defendant was living at a rehabilitation center in Los Angeles. In the late morning of April 29, defendant visited his grandmother and asked for money. When his grandmother said she had none, defendant left.
Shortly thereafter, from a restaurant window a mile and a half from the home of defendant’s grandmother, Brandon Wilson saw the following: Ella Suggs (53 years old) was sitting on a bench at a bus stop across the street. Defendant walked past Suggs, looked in both directions, and returned to the bus stop. He then placed his hands near Suggs’s neck and pulled down what Wilson thought was a necklace. When Suggs tried to get up and walk away, defendant “yanked” her back to the bench, raised his hands over his head, and brought them down on Suggs’s chest area. Wilson exclaimed to his family: “There’s an old lady . . . getting beat up on.” His sister, Brittany Todd, then looked out the window and saw defendant running away.
When Los Angeles County Sheriff’s deputies arrived, Suggs was dead. A single stab wound had penetrated her aorta, heart, and lungs. Near her body was a bloody paintbrush, its handle sharpened to a point. When defendant was arrested later that day in a nearby parking lot, he blurted out, “I didn’t do it.”
*148 From jail, defendant called his uncle, Sheldon Daniels, who lived with defendant’s grandmother. Defendant asked Daniels to “come to court and verify” that defendant was “there at the time” with Daniels.
Missing from victim Suggs’s body was a necklace with a turtle pendant that she customarily wore; also missing were her reading glasses, which she usually wore around her neck on a gold chain. Those items were never found.
At defendant’s jury trial for the murder of Suggs, psychiatrist Jack Rothberg testified for the defense that defendant suffered from schizophrenia, which Dr. Rothberg described as “a major mental condition marked by a constellation of symptoms, including disturbances of thought and reasoning often associated with hallucinations . . . and delusions.” In Dr. Rothberg’s view, defendant was “psychotic” when he killed Suggs. Dr. Rothberg mentioned defendant’s month-long stay in 2001 at a psychiatric hospital, followed some three years later by six months at another psychiatric hospital in connection with a criminal charge of stalking and a finding of incompetence to stand trial.
Sheldon Daniels (defendant’s uncle) and Deniece Bonner (Daniels’s girlfriend) testified that on the morning of the killing they saw defendant at the home of defendant’s grandmother; defendant seemed “excited and agitated” and acted as if he were “on sherm.”[1] They again saw defendant later that morning in a church parking lot. Bonner said that defendant did not talk rationally and for no apparent reason crawled under a car. Daniels and Bonner took defendant back to his grandmother’s home, where Bonner gave defendant seven dollars and some bus tokens. Defendant then left.
Defendant testified that on the morning of Suggs’s death, he had argued with the pastor at the rehabilitation center where defendant was living, and he was then asked to leave. He went to his grandmother’s home and unsuccessfully asked her for some money. After leaving, he saw a Black woman at a bus stop. He said, without elaboration, that “[sjomebody was saying something violent to me . . .” and someone “did something to me,” after which the stabbing occurred. He repeatedly insisted that he did not “intentionally” kill Suggs, but he offered no coherent explanation why he killed her.
In the prosecution’s rebuttal, psychiatrist Kaushal Sharma testified that although defendant was schizophrenic, there was “no credible information” *149 that he was “in a psychotic state” when he killed Suggs. On cross-examination by the defense, Dr. Sharma mentioned being told by defendant that just before the killing he was beaten with a crowbar at a bus stop by some unidentified persons. Defendant made no reference to any connection between the beating and his stabbing of Suggs.
Based on the defense theory that defendant stabbed Suggs because he unreasonably believed that he needed to defend himself (imperfect self-defense), defense counsel asked the trial court to instruct the jury on voluntary manslaughter, a lesser offense necessarily included within the charged crime of murder. (See CALCRIM No. 571.) The court refused to do so. After the jury found defendant guilty of first degree murder, the court sentenced him to a prison term of 25 years to life.
On appeal, defendant challenged the trial court’s refusal to instruct the jury on imperfect self-defense. In upholding the trial court’s ruling, the Court of Appeal stated that “the doctrine of imperfect self-defense does not apply where the subjective belief in the need to defend oneself arises not from objective circumstances but purely from the defendant’s mental illness.” The court reasoned that any perceived need by defendant to defend himself was based on a delusion that arose entirely from his mental illness, and therefore the trial court was right when it refused to instruct the jury on imperfect self-defense. Nevertheless, the Court of Appeal overturned defendant’s first degree murder conviction because defendant was prejudiced by the trial court’s failure to instruct the jury that evidence of hallucinations can negate premeditation, a requirement of first degree murder. Notwithstanding that reversal, defendant sought review in this court on the issue of whether imperfect self-defense can arise from a delusion caused by mental illness. This court granted review.
II
“Murder is the unlawful killing of a human being . . . with malice aforethought.” (§ 187, subd. (a).) A defendant who kills with the “deliberate intention unlawfully to take away the life of a fellow creature” (§ 188) acts with express malice; implied malice occurs when “no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart” (ibid.).
A person who kills in the belief that the killing is necessary to avert an imminent threat of death or great bodily injury lacks malice, an element of *150 the crime of murder. If that belief is reasonable, the killing is justified and therefore not a crime. (§ 197, subd. 3.) But if that belief is unreasonable, the crime is voluntary manslaughter (an unlawful killing without malice) under the doctrine of imperfect self-defense. This court has observed: “Imperfect self-defense obviates malice because that most culpable of mental states ‘cannot coexist’ with an actual belief that the lethal act was necessary to avoid one’s own death or serious injury at the victim’s hand.” (People v. Rios (2000) 23 Cal.4th 450, 461 [97 Cal.Rptr.2d 512, 2 P.3d 1066]; see People v. Anderson (2002) 28 Cal.4th 767, 782 [122 Cal.Rptr.2d 587, 50 P.3d 368] (Anderson)', Christian S., supra, 7 Cal.4th at p. 783; People v. Flannel (1979) 25 Cal.3d 668, 672 [160 Cal.Rptr. 84, 603 P.2d 1].) The unreasonable belief in the need for self-defense may stem from mental illness, negligence, subaverage intelligence, or a variety of other causes. To negate malice, it should not matter why the killer perceived a need for self-defense. Any genuine belief in the need for self-defense precludes a murder conviction, because such a belief “ ‘cannot coexist’ ” (Rios, supra, at p. 461) with the mental state of malice, an essential component of the crime of murder. It follows, therefore, that imperfect self-defense can arise from a delusion caused entirely by mental illness.
California’s statutory criminal law expressly allows criminal defendants to introduce evidence of mental illness to show they lack the requisite mental state of malice, a statutory element of murder. Pertinent here is section 28’s subdivision (a), which states: “Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.” (Italics added.) It follows from section 28’s plain language that someone who kills in the belief that the killing is necessary to avert death or great bodily injury may introduce evidence that the unreasonable belief arose as the result of a delusion that was caused by mental illness.
Disregarding this statutory directive, the majority instead adopts the analysis of the Court of Appeal in People v. Mejia-Lenares (2006) 135 Cal.App.4th 1437 [38 Cal.Rptr.3d 404] (Mejia-Lenares). That court seized on this court’s fleeting reference to the affirmative defense of mistake of fact contained in footnote 3 in Christian S., supra, 7 Cal.4th at page 779. Echoing the Court of Appeal’s explanation in Mejia-Lenares, the majority here concludes (1) imperfect self-defense “is ‘a species of mistake of fact’ ” (maj. opn., ante, at p. 136, quoting Mejia-Lenares, supra, at p. 1453); (2) a killer whose unreasonable belief in the necessity of self-protection stems entirely from a delusion is not acting under a mistake of fact; and (3) therefore, the doctrine *151 of imperfect self-defense can play no role in a killing caused entirely by the killer’s delusional belief in the need for self-defense. (Maj. opn., ante, at pp. 136-137.) I disagree, for two reasons.
First, the majority is wrong, as was the Court of Appeal in Mejia-Lenares, supra, 135 Cal.App.4th 1437, in describing this court’s 1994 decision in Christian S. as holding that imperfect self-defense is a “ ‘species of mistake of fact.’ ” (Maj. opn., ante, at p. 136; see Mejia-Lenares, supra, 135 Cal.App.4th at p. 1453.) What Christian S. does hold is that the Legislature did not abrogate imperfect self-defense when, in 1981, it abolished the “diminished capacity” defense to murder. (Christian S., supra, 7 Cal.4th at pp. 781-782.) As I noted in the preceeding paragraph, that decision’s only mention of mistake of fact appears in a brief footnote. That footnote states in passing that the defendant in Christian S., who claimed he killed in imperfect self-defense, asserted that “he acted under an unreasonable mistake of fact.” (Christian S., supra, 7 Cal.4th at p. 779, fn. 3.) The footnote then distinguishes the affirmative defense of “ignorance or mistake of fact” (§ 26, par. Three) from imperfect self-defense. Thus, this court’s decision in Christian S. does not hold that imperfect self-defense is a form of mistake of fact. Rather, that decision explains that imperfect self-defense is rooted in the notion that someone who kills in the belief that the killing is necessary to avert an imminent threat of death or great bodily injury does not have a “wrongful intent” (Christian S., supra, at p. 778), and therefore lacks malice, an essential element of the crime of murder (id. at pp. 778-779; see Anderson, supra, 28 Cal.4th at p. 782): This absence of malice, in my view, also pertains to a person whose genuine but unreasonable belief in the need for self-defense stems entirely from a delusion caused by a mental disorder. As a Court of Appeal decision explained, “A defendant’s mental state is the same when he kills in the honest-but-mistaken belief that the victim was reaching for a gun whether such belief is the product of a delusion or a mistaken interpretation of the victim’s reaching for his car keys.” (People v. Uriarte (1990) 223 Cal.App.3d 192, 197 [272 Cal.Rptr. 693].)
Second, even if mistake of fact were a critical part of imperfect self-defense, a person whose genuine belief in the need for self-defense is based entirely on a delusion does act under a mistake of fact. The person’s mistaken belief that an attack is occurring or is about to occur is a mistake of fact, even if that belief is entirely delusional.
The majority perceives its holding — that a person who kills based on an entirely delusional belief in the need for self-protection is not acting in imperfect self-defense — as necessary so that questions pertaining to the sanity *152 of a possibly delusional defendant are resolved at the sanity phase, rather than the guilt phase. (Maj. opn., ante, at pp. 144-146.) But the majority’s reasoning presents two problems. First, the majority’s holding cannot be reconciled with the plain language of section 28’s subdivision (a). (See p. 150, ante.) The majority essentially concedes this when it says that, in construing that section, it must look beyond “ ‘the letter of the law.’ ” (Maj. opn., ante, at p. 140.) Second, as explained below, the majority’s holding does not accomplish its stated goal of relegating sanity issues to the sanity phase.
Because a killer’s genuine belief in the need for self-defense negates malice (see pp. 149-150, ante), under my approach the jury at the guilt phase need not decide whether that belief was delusional, but only decides whether that belief was genuine, and if so, whether it was reasonable. Under the majority’s approach, by contrast, the jury at the guilt phase must decide whether the killer’s belief in the need for self-defense was based at least partially on fact (in which case the defendant lacked malice and committed voluntary manslaughter) or based entirely on a delusion caused by mental illness (in which case the defendant acted with malice and committed murder). Notwithstanding the majority’s claim that it is removing the question of the defendant’s sanity from the guilt phase and confining it to the sanity phase, it is doing the opposite.
The majority limits its holding to a defendant whose belief in the need for self-defense is “entirely” or “purely” delusional. (Maj. opn., ante, at pp. 130, 146.) According to the majority, a belief is entirely or purely delusional if it is “divorced from the circumstances,” meaning that there is an “absence of an objective correlate.” (Id. at p. 137.) Under the majority’s definition, someone who “sees a snake where there is nothing snakelike” is delusional, but one who thinks a stick is a snake is not delusional, even if the mistaken belief persists in the face of irrefutable evidence. (Ibid.) Thus, it would appear that, under the majority’s view, Don Quixote was not delusional because each of his famous misperceptions, including his belief that windmills were “ ‘monstrous giants’ ” (Miguel de Cervantes, Don Quixote (Ormsby, trans.) ch. VIII, pt. 1, available at <http://www.online-literature.com/Cervantes/don_quixote/> [as of June 2, 2014]) had, in the majority’s words, an “objective correlate.” Under the majority’s decision, defendants may continue to present Don Quixote-style delusional beliefs to support claims of imperfect self-defense based on mistakes of fact. (Maj. opn., ante, at pp. 145-146.) The unenviable task of distinguishing such partly delusional beliefs having some objective basis from those that are “purely” or “entirely” delusional will be left to trial courts and juries.
*153 III
I now apply the relevant legal principles to the facts here.
Defendant testified that he was sitting at a bus stop when someone said “something violent” and “did something” to him; he then stabbed Suggs. For three reasons, this evidence is inadequate to support defendant’s requested jury instruction on the imperfect self-defense theory of voluntary manslaughter.
First, as described in part II, ante, imperfect self-defense (a genuine but unreasonable belief in the need for self-defense) applies only when the killer unreasonably perceives an imminent threat of death or great bodily injury. (Christian S., supra, 7 Cal.4th at p. 783.) Here, defendant did not testify, nor does the record before this court show, that he perceived an immediate risk of death or great bodily injury when he stabbed and killed Suggs.
Second, a killer acting in imperfect self-defense must unreasonably believe that the victim put the killer at risk of death or great bodily injury. (See People v. Rios, supra, 23 Cal.4th at p. 461 [imperfect self-defense applies when the defendant unreasonably believes “the lethal act was necessary to avoid . . . death or serious injury at the victim’s hand”].) Here, the record contains no evidence that defendant believed victim Suggs had threatened him in any manner. Although defendant testified at trial that “[s]omebody was saying something violent” (italics added) to him just before he killed Suggs, and he previously had told prosecution psychiatrist Sharma that someone had hit him with a crowbar before the stabbing, defendant did not say that the “somebody” or “someone” was Suggs.
Third, imperfect self-defense applies only when a defendant unreasonably believes that “deadly force is necessary in self-defense.” (People v. Manriquez (2005) 37 Cal.4th 547, 583 [36 Cal.Rptr.3d 340, 123 P.3d 614], italics added.) Here, defendant did not testify that he perceived a need to kill Suggs to protect himself; rather, he repeatedly asserted that he did not “intentionally” kill Suggs, claiming he acted “out of anger” after “something violent,” not elaborated, was said or done to him.
“[A] trial court is not required to instruct the jury as to all lesser included offenses, only those that ‘find substantial support in the evidence.’ [Citation.] In this context, substantial evidence is evidence from which reasonable jurors could conclude ‘ “that the lesser offense, but not the greater, was committed.” ’ ” (People v. Medina (2007) 41 Cal.4th 685, 700 [61 Cal.Rptr.3d 677, 161 P.3d 187].) Here, as explained above, the record lacks substantial evidence from which a reasonable juror could have found defendant guilty not of murder but only of voluntary manslaughter, based on a theory of *154 unreasonable self-defense. Thus, the trial court was right in denying defendant’s request for a jury instruction on voluntary manslaughter based on a theory of imperfect self-defense.
Werdegar, J., and Liu, J., concurred.

Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

 “Sherm” is a street name for a cigarette laced with phencyclidine (PCP), a hallucinogenic drug. (See In re Hardy (2007) 41 Cal.4th 977, 1013 [63 Cal.Rptr.3d 845, 163 P.3d 853].)