Filed 4/30/13  P. v. Barrera CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ENRIQUE BARRERA,<br><br>      Defendant and Appellant. | A134600<br><br>(Solano County<br>Super. Ct. No. FCR278103) |

Defendant Enrique Barrera (Barrera) appeals from his conviction of assault by a life prisoner with infliction of great bodily injury and possession of a weapon while confined in a penal institution.  He maintains (a) the trial court erred in rejecting his request to modify the imperfect self-defense instruction, (b) no substantial evidence supports his conviction of assault with great bodily injury, and (c) the court erred in failing to stay the sentence on the possession conviction under Penal Code section 654.  The Attorney General agrees the latter point has merit, as do we.  We therefore order the judgment corrected in that respect, but otherwise affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

On February 14, 2010, Barrera was an inmate at the California State Prison facility in Solano, serving a life term for torture.  At about 6:20 a.m., Correctional Officers Dante Viloria and Juan Granadoz observed Barrera beating a fellow inmate, Guillermo Chavez.  No other inmates were near them at the time.  Officer Granadoz observed Barrera "striking Chavez in the facial area . . . several times" with both hands.  Chavez was "on the ground, like in a fetal position, trying to cover his face."  Viloria observed Barrera

1

"on top of Inmate Chavez . . . continuously punching on Inmate Chavez on the head and the facial area . . . with closed fists." Chavez was "tr[ying] to protect himself, but he just got overpowered by Inmate Barrera."

Granadoz and Viloria ordered the prisoners to "stop fighting" and ordered Barrera to "get down," but he did not comply. They sprayed both inmates with pepper spray in the facial area, but Barrera continued to punch Chavez. After he ran out of pepper spray, Granadoz "transitioned to [his] baton" in order to "get [Barrera] off of Mr. Chavez." He struck Barrera with the baton in the left leg once, but Barrera continued hitting Chavez. Barrera finally stopped hitting Chavez when one of the prison's roof gunners shot a rubber bullet at him, hitting him in the back. Officers were then "able to get Mr. Barrera off of Chavez, onto the ground . . . to handcuff him and escort him to the Center Complex."

Barrera claimed Chavez prevented him from complying with the officers' orders to stop fighting because Chavez had grabbed his arm. Granadoz never saw Chavez hit Barrera, explaining "[Chavez] was pretty much defending himself at the time of the incident." Viloria observed Chavez and Barrera initially "exchanging blows," but then Chavez was "tr[ying] to protect himself."

After the officers pulled Barrera off Chavez, they noticed Chavez had a "very thin piece of metal, sticking out of his left eye [that] . . . was hard to notice at first because there was a lot of blood." He also had a bruise on the left side of his head. They escorted Chavez to the prison clinic, where nurses called an ambulance. He was transported to VacaValley Hospital, then transferred to U.C. Davis Medical Center because of the severity of his injuries. A surgeon removed a "[m]etal-looking wire" from his eyeball and closed the wound with sutures. The wire was "a little over two inches long . . . broken off on one end [with] . . . a sharp point at the other end." A laceration above Chavez's eye was also closed with sutures. In contrast, the correctional officers observed no injuries on Barrera.

Barrera claimed he did not have a weapon or puncture Chavez's eyeball with the wire, and he punched Chavez in either self-defense or imperfect self-defense. He

2

testified that when he greeted Chavez that morning as they exited the building, he put his hand over Chavez's shoulder and Chavez turned around and struck him on his inner elbow, "like a sting, rubber-band type of thing." The "sting" caused "a little redness, with like a hole, scratch mark." He saw Chavez drop an object, but could not see what it was. Barrera "tried to step back" while Chavez approached him "with hands up." He did "[w]hat anybody would do. I tried to defend myself. [¶] . . . [¶] I tried to subdue the subject and take him down." He admitted he punched Chavez with his fists, but denied "strik[ing] Mr. Chavez with a piece of wire." Barrera's attorney asked him "Did you feel, at this point, after Mr. Chavez struck you, that you were in danger of being injured?" Barrera responded "Well, um, it's interesting. When you are in prison, when something like this happens, of course." Later, on redirect examination, his attorney asked: "[B]ased on what Mr. Chavez did in the yard, when he struck you, did [you] feel you needed to defend yourself?" Barrera responded "Very much."

Barrera testified his prison paperwork mistakenly identified him as a sex offender by putting an "R" after his name, and Chavez had seen this paperwork. Fermin Rubio, a retired correctional officer and investigator, testified an "'R' suffix is placed on an inmate classification score" if he or she "has a requirement to register as a sex offender." This would include someone who had been convicted of child molestation. Rubio stated other inmates look upon child molesters "with disdain," it is "not impossible for another inmate to have access to [a] piece of mail" that might contain the "R" suffix, and a prisoner with an "R" suffix would have "reason to be concerned out in the general population." Rubio had not interviewed Chavez, however, to determine if he knew about Barrera's background.

The Solano County District Attorney charged Barrera with assault by a life prisoner with personal infliction of great bodily injury (Pen. Code, §§ 4500, 12022.7, subd. (a))[1] and possession of a weapon while confined in a penal institution. (§ 4502.) The information also alleged Barrera had a prior serious felony conviction (§ 667, subd.

---

[1] All further undesignated statutory references are to the Penal Code.

(a)), a prior strike conviction (§ 1170.12), and two prison priors.  (§ 667.5, subd. (b).)  A jury found Barrera guilty of both offenses and found the enhancing allegation true.  The court sentenced him to 12 years to life for the assault by a life prisoner charge (nine years for the assault and three years for the allegation of infliction of great bodily injury).  The court also sentenced him to two years for the custodial possession of a weapon, five years for the prior felony conviction allegation and one year for the prior prison term allegation.

## DISCUSSION

### *Imperfect Self-Defense Instruction*

Barrera contends the trial court erred in refusing his proposed modification of CALCRIM No. 571 defining imperfect self-defense.  He asserts the instruction given by the court was erroneous because it required the jury to find he believed he was in imminent danger of *great* bodily injury rather than "*any* bodily injury."

Imperfect self-defense is a doctrine negating the mental state of malice aforethought (*People v. Michaels* (2002) 28 Cal.4th 486, 529), one of the required elements of the crime of assault by a life prisoner.  (§ 4500.)  Section 4500 provides in pertinent part:  "Every person while undergoing a life sentence, who is sentenced to state prison within this state, and who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death or life imprisonment without the possibility of parole. . . ."  (§ 4500.)  "[M]alice and malice aforethought are not synonymous.  [Citation.]  Malice aforethought as used in section 4500 has the same meaning as it has for murder convictions, requiring either an intent to kill or 'knowledge of the danger to, and with conscious disregard for, human life.' "  (*People v. Jeter* (2005) 125 Cal.App.4th 1212, 1216, citing *People v. St. Martin* (1970) 1 Cal.3d 524, 536–537.)

Imperfect self-defense requires an " 'honest but unreasonable belief that it is necessary to defend oneself from imminent peril to life or great bodily injury." [2] (*In re Christian S.* (1994) 7 Cal.4th 768, 773, italics omitted, quoting *People v. Flannel* (1979) 25 Cal.3d 668, 674.)[3] That actual belief, even if not objectively reasonable, negates the mental state of malice aforethought. (*In re Christian S.*, at p. 773.) "[I]mperfect self-defense precludes a finding of malice [aforethought] *where* [it] *is an element* of the charge. . . ." (*People v. Rios* (2000) 23 Cal.4th 450, 463.) "[It] obviates malice because that most culpable of mental states "cannot coexist" with an actual belief that the lethal act was necessary to avoid one's own death or serious injury at the victim's hand." (*Ibid.*)

Barrera maintains the trial court erred in instructing the jury with CALCRIM No. 571, defining imperfect self-defense, because it requires an actual but unreasonable belief in the necessity to defend oneself against imminent peril to life or *great bodily injury*. He claims "imperfect self-defense in the non-homicide context requires an actual but unreasonable belief that the person is in danger of suffering *any* bodily injury, not just death or great bodily injury."

Barrera cites no case in which an imperfect self-defense instruction was modified in the way he sought by eliminating the requirement that the bodily injury feared must be *great*. The reason for the absence of any such case is apparent—the doctrine of imperfect self-defense only negates the mental state of malice aforethought, and thus does not apply to crimes without that requirement. (See *People v. Minifie* (1996) 13 Cal.4th 1055, 1069 ["this case involves an assault, not a homicide, and thus no question of *imperfect* self-defense is presented"]; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 835–836 [the theory of unreasonable self-defense does not apply to mayhem or aggravated mayhem because neither require the mental state of malice aforethought, only malice]; *People v.*

---

[2] "Although *Flannel* and other opinions referred to an 'honest belief' we shall use the more precise term '*actual belief*' . . . ." (*In re Christian S.*, *supra*, 7 Cal.4th at p. 773.)

[3] Superseded by statute as stated in *In re Christian S., supra*, 7 Cal.4th at p. 774.

*Vital* (1996) 45 Cal.App.4th 441, 446 [imperfect self-defense inapplicable to crime of torture].) The doctrine does not apply based on the actus reas of the crime.

Barrera instead cites cases involving "perfect" or complete self-defense in cases involving assault or battery. "Perfect" self-defense, in contrast to imperfect self-defense, is a complete justification for the crime, not merely a negation of a required mental state. (*People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201.) Indeed, the crimes of assault and battery, unlike the crime of assault by a life prisoner, do not include malice aforethought as the required mental state—rather, both are general intent crimes. (*People v. Williams* (2001) 26 Cal.4th 779, 788 (assault); *People v. Hayes* (2006) 142 Cal.App.4th 175, 180 (battery).) Thus, the cases cited by Barrera are inapposite, and the trial court did not err in refusing his proposed modification to the jury instruction on the doctrine of imperfect self-defense.

### Substantial Evidence

Barrera next claims there is no substantial evidence he acted with malice aforethought or that he did not act in self-defense in assaulting Chavez.

The standard of review in determining whether substantial evidence supports a verdict is well settled. "On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] ' "[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' " (*People v. Snow* (2003) 30 Cal.4th 43, 66, quoting *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) " ' " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " ' " (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, quoting *People v. Stanley* (1995) 10 Cal.4th 764, 792–793.)

Barrera asserts there is no substantial evidence he acted with malice aforethought, which, as we explained in the prior section, requires either an intent to kill or knowledge of the danger to, and with conscious disregard for, human life. (*People v. Jeter, supra,* 125 Cal.App.4th at p. 1216.) He cites to his own testimony denying that he punctured Chavez's eyeball and asserting he fought with Chavez in self-defense.

However, "[t]he fact that a weapon was used in committing a crime may be proved by circumstantial as well as by direct evidence, like any other fact in a case." (*People v. Long* (1945) 70 Cal.App.2d 470, 471.) The evidence showed Chavez did not have a wire in his eye prior to his contact with Barrera. Barrera, himself, testified he did not notice anything in Chavez's eye before the altercation. Three correctional officers observed the altercation between Barrera and Chavez. None of them saw the beginning of the incident, but all saw Barrera repeatedly punching Chavez in the face while Chavez tried to ward off the blows. Although there was no testimony regarding how the wire got in Chavez's eye, the officers observed it protruding from his eye after they broke up the fight. This is sufficient evidence from which the jury could conclude Barrera had control of the wire and inserted it into Chavez's eyeball.

Barrera maintains "[e]ven if, arguendo, there was sufficient evidence from which it could be reasonably inferred that [Barrera] in fact had possession of the wire and that he inserted it into Chavez's eye, such does not reflect an intent to kill or an act dangerous to human life undertaken with a conscious disregard for human life. The object involved in this case was not a gun or a knife, but . . . was a small piece of wire . . . ." However, courts have concluded a pellet gun is capable of inflicting great bodily injury because it "[c]ould expel pellets at speeds in excess of those required to . . . enter an eyeball" (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 541), and a "four-inch-long sharp and pointed pin" qualified as a deadly weapon because it can be " 'lethal' under certain circumstances." (*People v. Hughes* (2002) 27 Cal.4th 287, 383.) While the wire used to puncture Chavez's eyeball was fairly short and not a traditional weapon, the manner in which it was used was sufficient to show conscious disregard for human life.

Barrera further asserts there is insufficient evidence to show he did not act in self-defense. Again, he relies on own testimony. Barrera admittedly touched Chavez first— he testified he said "good morning" and placed his hand over Chavez's shoulder. Chavez turned around and, according to Barrera, "struck" him on the inner elbow. It was not a punch, but "more like a . . . sting, rubber-band type of thing." Barrera claimed he "tried to step back . . . while Mr. Chavez basically approached [him] with his hands up." When asked if he felt he was "in danger of being injured" at that point, Barrera responded "Well, um, it's interesting. When you are in prison, when something like this happens, of course." He then overpowered Chavez by hitting him with his fists. He claimed he was unable to stop beating Chavez because Chavez "grabbed [his] arm at one point, and he wouldn't let go of [him]. To follow orders" by the correctional officers to stop.

On the other hand, three correctional officers observed the altercation between Barrera and Chavez. None saw the beginning of the incident, but all saw Barrera repeatedly punching Chavez in the face while Chavez tried to ward off the blows. Barrera was then ordered to stop, then pepper-sprayed, then hit with a baton, and finally fired upon and hit by a rubber bullet before he stopped punching Chavez. This evidence was sufficient to permit the conclusion Barrera was the aggressor, not the victim. (See *People v. Lewis* (2001) 25 Cal.4th 610, 643 ["Although the evidence is circumstantial, the intent . . . is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime."].) In sum, there was ample basis on which the jury could conclude Barrera's own testimony that he was acting in self-defense was implausible and reject it. (See *People v. Ramos* (1984) 37 Cal.3d 136, 149; *People v. Lashley* (1991) 1 Cal.App.4th 938, 946.)

***Stay of Sentence for Weapon Possession***

The Attorney General concedes Barrera's two-year sentence for custodial possession of a weapon should have been stayed under section 654. That section provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished

8

under more than one provision." (§ 654, subd. (a).) In circumstances where " 'the evidence shows a possession [of a weapon] only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.' [Citation.]" (*People v. Bradford* (1976) 17 Cal.3d 8, 22.) Where, as here, "there is no evidence in the record . . . that defendant possessed the weapon except during the assault [with a deadly weapon] [citation] he could not have been properly sentenced under both violations found against him." (*People v. Duran* (1976) 16 Cal.3d 282, 296, fn. 16.)

## DISPOSITION

The two-year sentence imposed for violation of section 4502 shall be stayed. The superior court is ordered to issue a corrected abstract of judgment and forward a corrected copy to the Department of Corrections. In all other respects, the judgment is affirmed.


_____
Banke, J.


We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.


9