Filed 12/17/15  P. v. Orozco CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068491 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI1301531) |
| ARTHUR OROZCO et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, John M. Tomberlin, Judge.  Judgment vacated and remanded with directions.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant Arthur Orozco.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant Jeffrey Batson.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Arthur Orozco and Jeffrey Batson (together, appellants) of the second degree murder of Roger Miller. The jury also found true a special allegation that, in the commission of the offense, a principal was armed with a firearm. The jury also convicted Paul Pavelak of involuntary manslaughter and found true the special allegation as to him as well. Pavelak is not a party to this appeal. Appellants appeal, contending the trial court erred in: (1) refusing to instruct the jury on voluntary manslaughter based on imperfect self-defense, and (2) denying them a sentencing continuance to permit them to investigate potential juror misconduct. Batson also contends his abstract of judgment must be corrected to eliminate a fine that was not included in the trial court's oral pronouncement of judgment. We conclude the trial court abused its discretion in denying appellants a continuance to investigate potential juror misconduct. We also conclude Batson's abstract of judgment improperly includes a fine not included in the trial court's oral pronouncement of judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Appellants do not challenge the sufficiency of the evidence. Accordingly, we summarize the facts to provide background for their contentions on appeal.

Amber Gutierrez and her children lived with Miller in his home in Victorville, California. Gutierrez was a drug addict and helped Miller sell drugs. In May 2013, they got into an argument. When Pavelak attempted to pick Gutierrez up, Miller was holding a bat and stated, "I will beat your ass with this bat. I'll leave you for dead. I'll kill you." Pavelak drove off without Gutierrez.

The fight between Gutierrez and Miller escalated. Gutierrez went to a nearby house and used the phone to call Pavelak. Pavelak and Orozco picked Gutierrez and her children up and took them to a motel where they met Batson. Thereafter, they all drove to another motel where Gutierrez stayed with her children.

Early that morning, Bessie Velasco met with Orozco, Batson, and Pavelak in the motel parking lot. While they were all in Batson's truck, the three men discussed a plan to scare and beat up Miller. They drove to Miller's home. When they arrived, Velasco's role was to knock on Miller's door to get him to come out. Velasco understood that she would then go back to the truck while the men jumped Miller.

Pavelak and Batson, holding a shotgun, went to Miller's front door, but saw Miller approaching from down the street. At that point, Velasco ran back to the truck. She heard two gunshots and saw Miller fall to the ground.

When Batson got back to the truck, Velasco asked why he shot Miller. Batson replied that he did not shoot Miller in a spot where it would kill him. Velasco then asked Batson why he shot Miller a second time. Batson said it looked liked Miller was reaching in a bag for something.

Batson said they needed to go back to pick up the shell casings. Pavelak got out of the truck and the others returned to the motel where Gutierrez was staying. Orozco told Gutierrez, "[w]e robbed him" and "[w]e shot him." He explained that Batson shot Miller with a shotgun. Orozco also said that he did not know if Miller was dead.

A forensic pathologist determined that Miller had two gunshot wounds consistent with a shotgun. Miller's cause of death was shotgun wounds on his left buttock and

3

thigh, with some pellets piercing his femoral artery.  A crime scene specialist with the San Bernardino County Sheriff's Department found two shotgun shells at the scene of the crime.  Sheriff's deputies also found a baseball bat lying in the grass.

## DISCUSSION

### I. *Imperfect Self-Defense Instruction*

Appellants argue the trial court prejudicially erred by refusing to instruct the jury on voluntary manslaughter based on imperfect self-defense.  We disagree.

A.  General Homicide Principles

First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation.  (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.)  Second degree murder is an unlawful killing with malice, but without the elements of premeditation and deliberation.  (*Ibid.*)  Malice may be express (intent to kill) or implied (intentional commission of life-threatening act with conscious disregard for life).  (*Ibid.*)

Even when a defendant has the intent to kill or conscious disregard for life, a homicide may be further reduced to voluntary manslaughter in limited, explicitly defined circumstances that are viewed as negating malice.  (*People v. Moye* (2009) 47 Cal.4th 537, 549; *People v. Lasko* (2000) 23 Cal.4th 101, 107-109.)  For voluntary manslaughter, malice is deemed to be negated by the defendant's (1) heat of passion arising from provocation that would cause a reasonable person to react with deadly passion, or (2) unreasonable but good faith belief in the need to act in self-defense (imperfect self-defense).  (*Ibid.*)  Under these two limited circumstances, voluntary manslaughter negates malice even though the lethal act was committed with the intent to kill or conscious

4

disregard for life that otherwise establishes malice.  (See *People v. Bryant* (2013) 56 Cal.4th 959, 968; *People v. Rios* (2000) 23 Cal.4th 450, 460-461, 467.)

Finally, an unlawful homicide without intent to kill and without conscious disregard for life is involuntary manslaughter.  (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006.)  Involuntary manslaughter can arise from a lawful act, a misdemeanor, or a noninherently dangerous felony committed with criminal negligence; i.e., aggravated, reckless conduct that creates a foreseeable high risk of death.  (*Id*. at pp. 1006, 1008; see *People v. Bryant*, *supra*, 56 Cal.4th at p. 974 (conc. opn. of Kennard, J.).)

B.  Imperfect Self-defense

"An unlawful killing involving either an intent to kill or a conscious disregard for life constitutes voluntary manslaughter, rather than murder, when the defendant acts upon an actual but unreasonable belief in the need for self-defense.  [Citations.]  In addition, a homicide is justifiable and noncriminal where the actor possessed both an actual and reasonable belief in the need to defend.  [Citations.]  In either case, 'the fear must be of imminent harm.  'Fear of future harm — no matter how great the fear and no matter how great the likelihood of the harm — will not suffice.  The defendant's fear must be of *imminent* danger to life or great bodily injury.'  [Citations.]  The trial court need not give [perfect or imperfect self-defense] instructions on request absent substantial evidence to support them."  (*People v. Stitely* (2005) 35 Cal.4th 514, 550; see also *People v. Manriquez* (2005) 37 Cal.4th 547, 581; *In re Christian S*. (1994) 7 Cal.4th 768, 783.)

Where there is no evidence from which a jury could reasonably conclude a defendant had an actual or honest belief in the need to defend against imminent danger to

5

himself or others, such instructions are properly refused. (*People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1269; accord, *People v. Breverman* (1998) 19 Cal.4th 142, 162 [instructions on imperfect self-defense required where the evidence that the defendant was guilty only of that lesser offense is " 'substantial enough to merit [a jury's] consideration' "; the existence of any evidence, no matter how weak, will not justify instructions on a lesser included offense]; *People v. Barton* (1995) 12 Cal.4th 186, 201 [sua sponte instruction that defendant killed in unreasonable self-defense is not required when the evidence is " 'minimal and insubstantial' "].)

" 'The concepts of perfect and imperfect self-defense are not entirely separate, but are intertwined. We have explained that 'the ordinary self-defense doctrine—applicable when a defendant reasonably believes that his safety is endangered—may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified. [Citations.] It follows, a fortiori, that the imperfect self-defense doctrine cannot be invoked in such circumstances.' " (*People v. Enraca* (2012) 53 Cal.4th 735, 761.) On appeal, we review de novo whether the trial court erred in refusing to instruct the jury on the theory of imperfect self-defense. (*People v. Manriquez*, *supra*, 37 Cal.4th at p. 581.)

C. Analysis

We conclude that the evidence in this case did not require giving an imperfect self-defense instruction. First, the record is devoid of evidence suggesting that appellants shot Miller because they believed they were in imminent danger of being killed or seriously

6

injured. Rather, appellants, armed with a shotgun, went to Miller's home with a plan to beat him up. They saw Miller approaching from down the street, but did not retreat at that point. Although sheriff's deputies found a bat at the scene of the crime, there was no evidence that Miller charged at appellants, initiated an altercation, or in any way used the bat against them.

Moreover, when Velasco questioned Batson about why he shot Miller, Batson initially stated that he did not shoot Miller in a place where it would kill him. Batson did not state anything about being in fear of imminent harm. While Batson also told Velasco that he thought Miller was reaching for something in a bag, that statement was in response to Velasco's question about why Batson shot Miller a *second* time. At that point, Miller had already been shot once and thus, even if he was reaching for a weapon, it does not support appellants' theory of imperfect self-defense as appellants created circumstances in which Miller's use of force would have been justified.

Given the state of the evidence, in which nothing suggests Miller charged at appellants or initiated an altercation placing appellants in fear of imminent harm, the elements required for imperfect self-defense are lacking. Accordingly, we conclude the trial court correctly did not instruct the jury on imperfect self-defense.

D. Alleged Prejudice

Appellants contend the trial court's failure to instruct on imperfect self-defense rendered the instructions incomplete on the issue of malice and amounted to federal constitutional error.

7

To support their argument, appellants rely on *People v. Thomas* (2013) 218 Cal.App.4th 630 (*Thomas*). The *Thomas* court held that failure to instruct on heat of passion voluntary manslaughter as a lesser included offense of murder, where warranted, is federal constitutional error because heat of passion negates malice, malice is a necessary element of murder, and, therefore, failure to instruct on heat of passion unconstitutionally reduces the prosecution's burden of proving every element of the charged crime. (*Id.* at pp. 643-644.) However, in *Thomas*, the appellate court found that the evidence supported a finding that the defendant's passion was aroused and his reason obscured when he shot the victim. As a result, the trial court erred when it refused to instruct the jury on voluntary manslaughter based on a theory of heat of passion. (*Id.* at pp. 633, 645.)

Here, unlike *Thomas*, instruction on the lesser offense was not warranted by the evidence. Thus, the question of whether appellants' federal constitutional rights were violated does not arise.

II. *Sentencing Continuance*

A. Background

At a jury instruction conference in April 2014, Pavelak's counsel noted that a male juror's wife or girlfriend was routinely sitting in the gallery. (Undesignated date references are to the year 2014.) In May, during the original sentencing hearing, Orozco's counsel noted that the male juror was present and requested that the court provide him with the juror's number. The court denied the request.

8

On June 27, the continued date for sentencing, Orozco's counsel requested a continuance of approximately two months because he had received statements from Orozco's family members regarding contacts they observed between a juror's wife and Miller's father. Orozco's counsel informed the court that he received the statements a few days before he left on a trip on June 4. He returned from his trip on June 19, but had not had an opportunity to follow up on the statements.

Orozco's counsel provided the court with letters that he had received from two of Orozco's family members. Orozco's counsel explained that Orozco's family members had observed a juror's wife speaking with Miller's father and placing her hand on his back. Additionally, on the original sentencing date, the juror in question and his wife spoke with Miller's family, sat next to them, and hugged them.

Batson's counsel also requested a continuance, complaining that he had not obtained the names of Orozco's family members who had provided the letters to Orozco's counsel until that morning. Batson's counsel stated that if the court denied a continuance, he would move for a new trial on the ground that Batson was not provided with an opportunity to fully investigate potential juror misconduct.

The prosecution opposed a continuance because Miller's family had traveled from Arizona to give impact statements. Batson's counsel noted that Pavelak intended to go forward with sentencing that day and thus Miller's family could make their statements concerning Pavelak.

The trial court observed that it did not see anything in the letters from Orozco's family members that warranted a mistrial. The court permitted counsel to make an oral motion for a new trial. After a dialogue with counsel regarding unsealing juror information, the court denied a sentencing continuance and new trial. The court went on to state that a motion to unseal juror information would be an "idle act" at that point because further investigation could not proceed as a result of the denial of a sentencing continuance.

B. Analysis

Appellants argue the trial court erred in denying them a sentencing continuance to permit them to investigate potential juror misconduct. We agree.

Juror misconduct usually leads to a rebuttable presumption of prejudice. (*People v. Danks* (2004) 32 Cal.4th 269, 302.) "When a trial court is aware of *possible* juror misconduct, the court 'must "make whatever inquiry is reasonably necessary" ' to resolve the matter." (*People v. Hayes* (1999) 21 Cal.4th 1211, 1255.)

A trial court has broad discretion in ruling on motions for continuance of sentencing and new trial. (*People v. Smithey* (1999) 20 Cal.4th 936, 1011-1012.) " 'Continuances shall be granted only upon a showing of good cause,' " and the moving party must show that the evidence could be obtained within a reasonable time. (*People v. Beeler* (1995) 9 Cal.4th 953, 1003.) "In determining whether a denial [of a continuance] was so arbitrary as to deny due process, the appellate court looks to the circumstances of each case and to the reasons presented for the request. [Citations.] One factor to

10

consider is whether a continuance would be useful." (*People v. Frye* (1998) 18 Cal.4th 894, 1012-1013.)

Here, the court exceeded its discretion in denying a sentencing continuance. In general, jurors commit misconduct when they directly violate the oaths, duties, and admonitions imposed on them. (*In re Hamilton* (1999) 20 Cal.4th 273, 294.) Those oaths, duties, and admonitions in this case included not allowing bias and sympathy influence decisions and not discussing the case with anyone other than fellow jurors. The letters from Orozco's family members suggested that further inquiry into whether a juror violated the court's instructions regarding improper influences and bias may have been productive.

While we note that a month had passed since Orozco's counsel received statements from Orozco's family members regarding potential juror misconduct, counsel had not had an opportunity to investigate the matter because he was away from his office most of that time. Moreover, Batson's counsel did not receive the names of Orozco's family members who had provided the letters until the morning of sentencing. We are mindful that Miller's family members had traveled from Arizona to give impact statements. However, as Batson's counsel noted, Pavelak intended to go forward with sentencing that day and thus Miller's family could have made their statements concerning Pavelak. Accordingly, any inconvenience to Miller's family members was not a proper reason to deny appellants a continuance.

Given the severity of the sentences appellants were facing and the information before the court, the trial court should have given appellants an opportunity to investigate

11

possible juror misconduct.  Instead of allowing a brief continuance for investigation, the trial court forced appellants to make an oral new trial motion on the day of sentencing without the benefit of evidence that an investigation may have revealed.  In doing so, the court abused its discretion.

While we express no opinion on the merits of a new trial motion, we conclude appellants should have the opportunity to engage in an investigation regarding possible juror misconduct and bring a new trial motion should they choose to do so based on the results of the investigation.  Accordingly, we vacate the judgment and remand with directions to the trial court to set a briefing schedule allowing for an investigation, motion for release of juror information, if necessary and proper, and potential new trial motion.  If appellants ultimately choose not to move forward with a new trial motion or if the new trial motion is denied on the merits, the judgment shall be reinstated.

III. *Discrepancy Between Oral Pronouncement and Abstract of Judgment*

Batson contends his abstract of judgment must be corrected to eliminate a $41 fine under former Penal Code section 12025, which was not included in the trial court's oral pronouncement of judgment.  The Attorney General concedes that the fine was improperly imposed but argues Batson's contention is moot because the abstract of judgment has since been modified and no longer includes the fine.  However, as Batson notes, the Attorney General refers to the abstract of judgment reflecting his indeterminate sentence whereas he is referring to a fine on the abstract of judgment for his determinate sentence.

12

Based on our review of the record, the trial court did not impose a $41 fine under Penal Code section 12025 in its oral pronouncement of judgment.  Thus, the abstract of judgment must be corrected to eliminate the fine.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate court may order correction of an abstract of judgment that does not accurately reflect the oral pronouncement of judgment].)

## DISPOSITION

The judgment is vacated and the case is remanded with directions to the trial court to set a briefing schedule allowing for an investigation, motion for release of juror information, if necessary and proper, and potential new trial motion.  If appellants ultimately choose not to move forward with a new trial motion or if the new trial motion is denied on the merits, the judgments shall be reinstated.

At the conclusion of the above proceedings, the trial court shall amend the abstracts of judgment appropriately, including eliminating the $41 fine imposed on Batson under former Penal Code section 12025, and forward the amended abstracts of judgment to the Department of Corrections and Rehabilitation.

McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.

13