Filed 12/27/21  P. v. Lara CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075705 |
| v. | (Super.Ct.No. FVI19000897) |
| MATTHEW ANDREW LARA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan K. Stodghill, Judge.  Affirmed.

Dawn S. Mortazavi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Matthew Andrew Lara had dated the victim for two years and they had a child together.  After they broke up, the victim posted a photograph of her

1

and a new man on social media.  Defendant responded, "fuck both of you."  Several days later, defendant appeared outside the victim's house asking to speak with her.  She told him she did not want to speak with him.  Defendant pulled out a gun and shot one time toward the victim putting a hole in a nearby sweater and purse.  Defendant ran into a nearby field.  When he was apprehended, he did not have the gun but had gunshot residue on his hands.  The victim had told the police the night of the shooting that defendant was the shooter but recanted her testimony at the preliminary hearing and initially at trial. The victim testified in the middle of trial that defendant was the shooter and that she had lied because she was afraid since she believed he was a gang member.

Defendant was found guilty of attempted voluntary manslaughter, personally using a firearm, disobeying a domestic relations court order and possession of a firearm by a felon.  On appeal, defendant contends (1) there was insufficient evidence presented that he was guilty of attempted voluntary manslaughter; and (2) the trial court erred by admitting irrelevant and prejudicial testimony that defendant was a gang member..

## FACTUAL AND PROCEDURAL HISTORY

A.    <u>PROCEDURAL HISTORY</u>

Defendant was charged in an amended information with the attempted premeditated and deliberate murder of the victim (Pen. Code, §§ 664, 187; count 1).[1]  It was further alleged as to count 1, that defendant personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b) and (c).  He was

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

2

additionally charged with disobeying a court order, a misdemeanor (§ 273.6, subd. (a); count 2) and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3). It was alleged as to counts 1 and 3 that he had suffered a prior serious and violent felony conviction (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d)) and that he had served four prior prison terms (§ 667.5, subd. (b)). The prior-conviction trial was bifurcated from the trial on the current charges and defendant waived his right to a jury trial.

The jury found defendant guilty of the lesser included offense of attempted voluntary manslaughter on count 1. The jury found defendant guilty of counts 2 and 3, and found the weapons-use allegations true. The trial court found the prior conviction allegations true. Prior to sentencing, the trial court struck the section 667.5, subdivision (b), enhancements. Further, it struck the firearm enhancements found true by the jury pursuant to section 122022.53, subdivisions (b), and (c), but imposed a weapons-use enhancement pursuant to section 12022.5, subdivision (a). Defendant was sentenced to 15 years four months to be served in state prison.

B.    FACTUAL HISTORY

1.    *PEOPLE'S CASE-IN-CHIEF*

a.    The Victim's Initial Trial Testimony

The victim[2] and defendant had been in a relationship for two years and had a child together. She called defendant either her "baby daddy" or "Moken." By April 1, 2019, the victim and defendant were no longer dating. On April 1, the victim lived on C Street

---

[2] The victim had a felony conviction and was on probation.

in Victorville with her sister, her niece and a roommate. She kept her belongings in the laundry room because she slept on the couch.

The victim did not recall that defendant was ever verbally or physically abusive to her during their relationship. She did not remember that she called the police on November 23, 2016, complaining that defendant punched her in the face and choked her. She also did not remember she called the police on August 18, 2017, and told a sheriff's deputy that defendant had thrown something at her head and kicked her. She insisted her memory was "messed up" or she was drunk at the time of these incidents.

On March 29, 2019, the victim posted photographs of herself with a man, Michael Dominguez, on social media. On that same day, defendant commented "Fuck both of you." The victim had been drinking the night of March 31 and did not recall calling the police around 1:00 a.m. on April 1 telling them she had been shot by her "baby daddy," because she was drunk. The victim only remembered that she came home from being out drinking and the last thing she remembered was that she watered her lawn. She blacked out from drinking eight to 10 large beers. She did not remember that deputies came to her house in response to a 911 call. She did not remember anything from April 1.

The 911 call made by the victim on April 1 was played for the jury. She identified herself and said that she lived on C Street in Victorville. She stated, "I need a deputy to my house please, cause um, my baby daddy just came and and shot at, um, tried to shoot um, well he shot, he actually shot inside, right here, in my laundry room." She was "right by it" when he shot. She was not injured. She then hung up. The victim identified her voice on the 911 call but still did not remember making the call.

4

The victim indicated she would always have feelings for defendant because he was her "baby daddy." They had a good relationship. The victim did not recall talking to defendant before trial about her testimony. The victim was shown a photograph of her purse, which had a hole in it; she could not recall how the hole got in her purse. There was a hole in a sweater that belonged to her but she did not remember how the hole got in the sweater. There was also a hole in a mirror in the laundry room; she did not recall how it got there but it was not there prior to April 1.

     b.  <u>The Victim's Trial Testimony that Defendant Shot Her</u>

On redirect examination, the victim was asked if she had a conversation with an investigator from the district attorney's office that day. She started crying. She admitted she confided in the investigator that defendant had shot at her on April 1. She told the investigator she was afraid to testify because she believed defendant was a gang member. She was afraid something would happen to her or her family if she testified defendant shot her.

The victim then testified that on April 1 she had been in her laundry room at home with Dominguez. She went to the kitchen to make Dominguez soup. When she walked back to the laundry room with the soup, defendant was at the laundry room door. The victim asked defendant "what the fuck was he doing" there. She set down the soup and stood in front of Dominguez. She then noticed defendant had a gun in his hand. Defendant's hand was shaking. Defendant told her, " 'I just want to talk to you.' " She told him that she had nothing to say to him. She was not concerned about the gun as she did not think that defendant would shoot her. Defendant then shot the gun. The bullet

5

went right pass her arm. The bullet was closer to her than Dominguez. Defendant took off running. She called the police. She did not tell them that Dominguez was with her because she did not want to get him involved. She believed the bullet hit her purse and a sweater. The bullet also hit the mirror in the laundry room.

The victim insisted she was finally telling the truth; she did not tell the truth at the preliminary hearing and earlier in the trial.

### c. Investigation

On April 1, 2019, Audria Cornett lived at the Route 66 Trailer Park located on South D Street in Victorville. C Street was directly behind her home. She called 911 sometime between midnight and 1:00 a.m. because she heard a loud bang that sounded like a gunshot. She was scared because it sounded very close. She did not go outside and see what had happened because the area was dangerous. Cornett described the victim's home as a "party house" with many people coming and going from the house.

San Bernardino County Sheriff's Deputy Rios was assigned to the Victorville station. He responded to a call of a shot fired around 12:45 a.m. on April 1 in the area of C Street in Victorville. When he arrived at the location, he met with the victim. He recorded a portion of their conversation. The victim told Deputy Rios that she had been walking back into the laundry room when she saw "Moken" who was her "baby daddy." He told her he wanted to talk to her. She tried to close the door because "he hits me you know." She told defendant that she did not want to talk to him. He had a gun in his hand and his hand was shaking. She said, "He was like I need to talk to you, I need to talk to you and then um, he was like, he like 'man when you fucken, I need to fucken talk to

6

you' and I was like I don't have nothing to stay to you Moken, I don't have nothing to say to you. And when I was trying to close it, he fucken shot and it went like that." She said, "it almost fucken hit me dude." Defendant ran off. The victim identified "Moken" as defendant.

Deputy Rios found a fired cartridge case near where the victim described defendant was standing when he shot the gun. The bullet was not found. Deputy Rios found the sweater and purse with holes in them in the laundry room. Deputy Rios discovered that defendant had a GPS ankle monitor. Records from the monitor showed that he had been at the victim's residence on April 1. The GPS monitor was used to track defendant; he was found in a field between two houses about one mile from the victim's residence. Upon his arrest, defendant's hands were sampled for gunshot residue. The samples taken from defendant's hands at the time of his apprehension were positive for gunshot residue.

Deputy Rios spoke with defendant. Defendant admitted he had recently been at the victim's home. Defendant admitted to being abusive to the victim in the past. Deputy Rios asked defendant if he shot the victim, and he responded, "Fuck no, man. I love her, dude. Why the fuck am I going to shoot her for." He also acknowledged he had a no negative contact order against him for being abusive to the victim in the past. The gun was never found.

Defendant and the victim had a conversation after the shooting, which was recorded. Defendant told the victim that he was calling to check on her and see how she was doing. The victim asked if she could talk, and he said it was okay as long she did not

7

use any names. Defendant pretended he was talking to someone other than the victim. He stated that the prosecution was not believing the victim's testimony from the preliminary hearing. Defendant stated, "Like I was talking to my boy XO, you know what I mean like, I was telling XO, like hey, you know what I mean, like if you ever see my baby mama, let her know what's up dude, like I'm here chopping it up every day, you know what I mean like . . . ." The victim told defendant she did not want to testify at trial.

2. *DEFENSE*

Defendant presented no evidence on his behalf.

**DISCUSSION**

A. SUFFICIENT EVIDENCE OF ATTEMPTED VOLUNTARY MANSLAUGHTER

Defendant contends insufficient evidence was presented to support his conviction of attempted voluntary manslaughter because there was no evidence of intent to kill and provocation.

1. *ADDITIONAL FACTUAL HISTORY*

During discussion of the jury instructions, defense counsel requested attempted voluntary manslaughter instructions. The prosecutor did not object. The jury was instructed on attempted murder that they had to find that "defendant took at least one direct but ineffective step toward killing another person. And, two, the defendant intended to kill that person." They were instructed that attempted voluntary manslaughter was a lesser include offense of attempted murder. The jury was instructed,

8

"An attempted killing that would otherwise be attempted murder is reduced to attempted voluntarily manslaughter in violation of section 664/192(a) of the California Penal Code if the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion. [¶] The defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if, one, the defendant took at least one direct but ineffective step toward killing a person. *Two, the defendant intended to kill that person*. . . . [T]hree, the defendant attempted the killing because he was provoked. Four, the provocation would have caused an ordinary person of average disposition to act irrationally and without due deliberation that is from passion rather than from judgment. And, five, the attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment. [¶] Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection. In order for a sudden quarrel or heat of passion to reduce an attempted murder to attempted voluntarily manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur for a short or long period of time. It is not enough that the defendant simply was provoked. [¶] . . . In deciding whether the provocation was sufficient, consider whether an ordinary person of average disposition in the same situation and knowing the same facts would have reacted from passion rather than judgment. If enough time passes between the provocation and the attempted killing for an ordinary person of average disposition to cool off and regain his or her clear

9

reasoning or judgment, then the attempted murder is not reduced to attempted voluntarily manslaughter on this basis.  [¶]  The People have the burden of proving beyond a reasonable doubt the defendant attempted to kill someone and was not acting as a result of a sudden quarrel or in the heat of passion.  If the people have not met this burden, you must find the defendant not guilty of attempted murder."

    2.     *ANALYSIS*

In reviewing a claim of insufficient evidence, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

"  '  "Murder is the unlawful killing of a human being with malice aforethought. [Citation.]  A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter.  [Citation.]"  [Citations.]  Generally, the intent to unlawfully kill constitutes malice.  [Citations.]  "But a defendant who intentionally and unlawfully kills [nonetheless] lacks malice . . . when [he] acts in a 'sudden quarrel or heat of passion' [citation], or . . . kills in 'unreasonable self-defense'— the unreasonable but good faith belief in having to act in self-defense."  '  "  (*People v. Rios* (2000) 23 Cal.4th 450, 460-461 (*Rios*), fn. omitted.)  "[I]t has long been held that the crime of attempted murder does require an intent to kill."  (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1549.)  Accordingly, "the crime of attempted voluntary manslaughter must also require a specific intent to bring about that same desired result (the killing of a human being)."  (*Id.* at pp. 1549-1550.)  "[A] conviction of voluntary manslaughter may be sustained upon proof and findings that the defendant committed an unlawful and intentional homicide."  (*Rios*, at pp. 469-470.)

"[W]here the defendant killed intentionally and unlawfully, evidence of heat of passion, or of an actual, though unreasonable, belief in the need for self-defense, is relevant only to determine whether malice has been established, thus allowing a conviction of *murder*, or *has not been established*, thus precluding a murder conviction and limiting the crime to the lesser included offense of voluntary manslaughter.  Indeed, in a murder case, unless the People's own evidence suggests that the killing may have been provoked or in honest response to perceived danger, it is the defendant's obligation to proffer some showing on these issues sufficient to raise a reasonable doubt of his guilt

11

of murder." (*Rios*, *supra*, 23 Cal.4th at pp. 461-462.) "[I]f the fact finder determines the killing was intentional and unlawful, but is not persuaded beyond reasonable doubt that provocation (or imperfect self-defense) was absent, it should acquit the defendant of murder and convict him of voluntary manslaughter." (*Id.* at p. 462.)

Here, defendant insists that the evidence was insufficient to prove that he had the intent to kill to support attempted voluntary manslaughter. The circumstantial evidence supports that defendant had the intent to kill.

"Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially." (*People v. Thomas* (2011) 52 Cal.4th 336, 355.) " ' "[T]he act of firing toward a victim at a close, but not point blank, range 'in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill.' " ' " (*People v. Perez* (2010) 50 Cal.4th 222, 230.) " 'The fact that the shooter may have fired only once and then abandoned his efforts out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance. Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily establish a less culpable state of mind.' " (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690.)

Here, the evidence established that defendant appeared at the victim's house, unannounced, in the early morning hours. Just a few days prior, he had commented on a social media post made by the victim with another man, telling her "Fuck both of you." He also admitted to being abusive to the victim in the past. Defendant was having problems with the victim seeing other men and wanted to talk to her. Defendant came to

12

the victim's house armed with a loaded firearm.  Defendant asked to speak with the victim, but she told he she did not want to talk to him.  The victim told Deputy Rios on the night of the shooting she tried to close the door on him because he "hits me."  Defendant then shot the gun.  The victim stated at trial that the bullet went right past her arm.  She told Deputy Rios on that night, that "the bullet almost fucken hit me dude."  The evidence supported that defendant had the intent to kill the victim based on shooting the gun in close range at her and almost hitting her.

Defendant contends there was no intent to kill because his hands were shaking and the victim did not think he would shoot at her or intentionally shoot at her.  Regardless of whether the victim thought defendant was not going to shoot her, he fired the gun at close range to her, almost hitting her.  The fact that his hands were shaking did not negate his intent to kill, as the shaking could have been for several reasons.  The evidence established intent to kill.

Defendant further contends the elements of attempted voluntary manslaughter were not met as the prosecution did not establish provocation.  However, the prosecution did not have the burden of proving provocation as it only went to malice.  "Provocation and imperfect self-defense are not additional elements of voluntary manslaughter which must be proved and found beyond reasonable doubt in order to permit a conviction of that offense."  (*Rios*, *supra*, 23 Cal.4th at pp. 469-470.)  Here, the evidence established that defendant had an intent to kill and reasonably could have been convicted of attempted murder.  The jury apparently concluded that defendant shot the victim in a heat of passion

13

and provocation despite there being little to no evidence of such provocation.[3]  Such determination by the jury does not require reversal.

"It has long been the rule in this state that, in the absence of prejudice, a defendant may not complain of error favorable to the defendant, including the giving of correct, but inapplicable, instructions and return of a verdict of an offense less than that which the evidence shows.  [Citations.]  [¶]  '[E]ven if it be assumed that the trier of fact erred here when he found defendant guilty only of manslaughter, defendant cannot invoke reversal on an error which is favorable to him.  [Citations.]  An appellant is precluded from complaining that he was convicted of a lesser offense than the one of which he is guilty according to undisputed evidence, or according to that view of the evidence which, it indisputably appears, the trier of fact accepted.' " (*People v. Lee* (1999) 20 Cal.4th 47, 57, citing to *People v. Powell* (1949) 34 Cal.2d 196.)

The evidence clearly established that defendant was guilty of attempted murder as he took a direct step of shooting at the victim with the intent to kill.  There was no substantial evidence of provocation or heat of passion.  Nonetheless, the jury determined that despite defendant having the intent to kill, he lacked malice due to heat of passion.  Defendant cannot complain that he was found guilty of the lesser offense of attempted

---

[3]  The prosecutor argued in closing that there was no provocation and that defendant was clearly guilty of attempted premeditated and deliberate murder.  Defense counsel argued that Dominguez had been the shooter and not defendant.  The jury apparently rejected these claims instead concluding that defendant acted in a heat of possession when he shot the victim.

14

voluntary manslaughter as the evidence established the attempted murder of the victim. Reversal of his conviction is not warranted.

B.     ADMISSION OF GANG EVIDENCE

Defendant contends the trial court erred by allowing testimony that the victim was afraid of defendant because she believed he was a member of a gang. Defendant additionally argues that the trial court erred by not granting his motion for mistrial brought after the trial court agreed to admit the testimony, based on the inability to voir dire the jurors on their views about gangs. Defendant insists reversal is required as his trial was fundamentally unfair.

1.     *ADDITIONAL FACTUAL BACKGROUND*

Prior to trial, the prosecution filed a trial brief. In the statement of anticipated facts, the prosecutor provided that the victim had disclosed that she was afraid of defendant because he was a member of the Eastside Victoria gang. Defendant made a motion to exclude any reference to defendant's gang membership as it was not relevant, and prejudicial pursuant to Evidence Code section 352.

The trial court initially ruled that the fact defendant was a gang member was too prejudicial. The trial court wanted evidence that the reason the victim recanted was due to his gang membership. There could be many reasons she recanted her testimony including that he was the father of her child. The prosecutor noted that the victim immediately told the police she did not want to talk to defendant and gave his gang name. The trial court was concerned that there was not a direct connection between the victim recanting and defendant's gang membership. The trial court did not think it was

15

probative of her state of mind. There were many reasons she may not want to testify. It was too prejudicial to introduce the gang evidence. The trial court ruled it was not admissible—without prejudice to the prosecutor providing additional evidence that the victim recanting was directly related to her believing defendant was a gang member. Jury voir dire commenced, which is not a part of the record.

The victim testified at an Evidence Code section 402 hearing in the middle of jury voir dire. She testified that defendant was a member of Eastside Victoria gang. The victim stated that if she testified against defendant, she would be a "snitch." She denied that she was afraid of defendant or his friends and family.

After the hearing, the trial court tentatively ruled that defendant's gang membership would not be admissible. It found no evidence that the victim was being intimidated by defendant or other gang members. However, the trial court would allow evidence that the victim herself was a member of a gang. Defendant's counsel objected arguing that if the victim was shown to be in a gang, the jury would believe that defendant was also in a gang. Defendant's counsel argued that no mention of gang evidence should be made as there were no gang allegations.

The trial court felt that the victim's involvement with the gang was relevant to her credibility, and that she did not want to be a snitch. The trial court reiterated there was no evidence that defendant's gang membership influenced her testimony. The prosecutor requested that the ruling on defendant's gang membership be without prejudice to providing further information to the court. Defendant's counsel objected arguing that if the evidence was coming in, he would want to voir dire the jurors about their bias against

16

gang members. The trial court agreed to make the ruling without prejudice and gave the prosecutor until the end of jury hardship excusals to provide the evidence. Voir dire continued and the jury panel was sworn in on September 10, 2019.

In the middle of trial, the trial court put on the record it had been made aware that the victim had made a statement to an Investigator Lazano at the district attorney's office. The victim told Investigator Lazano that she was afraid of defendant, that he was a gang member, and that he in fact tried to shoot her. She was concerned for her safety. The trial court was going to allow the prosecutor to inquire of the victim about her fear of defendant because she believed he was a gang member. She could testify that she felt she was in danger. The trial court would give a limiting instruction.

Defense counsel brought a motion for mistrial. Defense counsel argued the trial was fundamentally unfair and the evidence was highly prejudicial. Further, defense counsel was unable to voir dire the jurors on their feelings about gangs. Defense counsel felt that there was no way to "maneuver" around the evidence.

The trial court responded the victim originally told the police that defendant shot at her and defendant was a member of a gang. She told Investigator Lazano, that day, she was afraid of defendant because he was a gang member, which was consistent with her original statement to the deputies. The trial court ruled, "The Court's ruling [prior to trial] was based on the fact that she didn't indicate in her prior preliminary hearing testimony that she's afraid of the defendant . . . or her prior testimony was that she didn't remember. So based on that, the Court ruled that the prior gang allegations weren't going to come in. That she could talk about her own gang, because that goes to her state of

17

mind, but not the defendant's gang. [¶] However, in light of her new statements, and her statements about her fear and how fearful she is, and specifically related the fear that she specifically related to him being in the gang, the Court believes that is probative because it goes to her state of mind. It goes to why she changed her story, why she has told the jury that she doesn't remember. It goes to the state of mind. It goes to her credibility. It goes to her believability." The trial court did not believe the probative value was outweighed by the prejudice as it would instruct the jury that the evidence was only to be considered for the victim's state of mind. The trial court denied the motion for mistrial. The victim testified about defendant being a gang member as set forth, *ante*.

2. *ANALYSIS*

"The trial court has broad discretion to determine the relevance of evidence." (*People v. Jones* (2013) 57 Cal.4th 899, 947.)

"Under Evidence Code section 352, a trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time. 'Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome." ' " (*People v. Riggs* (2008) 44 Cal.4th 248, 290.) "On appeal, we review the trial court's rulings concerning the admissibility of the evidence for abuse of discretion." (*Ibid.*)

Initially, the trial court did not err by refusing to grant the motion for mistrial based on defendant's claim he had no chance to voir dire the jurors as to their potential bias based on defendant being a gang member.

18

A defendant is entitled to an impartial jury. (*People v. Mickel* (2016) 2 Cal.5th 181, 215.) In *People v. Mora and Rangel* (2018) 5 Cal.5th 442, the defendants complained that the introduction of gang evidence without the chance to voir dire the jury regarding gangs was error. The California Supreme Court found "otherwise." It found, "Although the prosecutor stated at the outset of trial that she did not believe gang evidence would be adduced, Mora acknowledged the possibility that some gang evidence could 'slip[] out.' During trial, the court reminded defense counsel that declining to conduct voir dire regarding gang issues 'was a tactical decision.' As [the Supreme Court has] explained in a slightly different context, '[d]efense counsel are routinely faced with difficult tactical decisions in having to fashion voir dire inquiries that probe for possible penalty phase biases regarding such evidence, while stopping short of revealing information otherwise prejudicial and excludable in the guilt phase.' [Citation.] [¶] The prosecutor never made any guarantee that she would avoid introducing gang evidence. And while defense counsel avoided addressing such evidence during voir dire, that choice did not impose on the prosecution any obligation to refrain from introducing such evidence at trial." (*Id.* at pp. 504-505.)

Here, defendant's counsel was made aware prior to trial the prosecutor sought to have the victim testify that she believed defendant was a gang member. While the evidence was initially excluded, the trial court stated it may admit the evidence if the prosecutor adduced evidence that there was a direct link between the victim recanting and defendant's gang membership. Defendant's claim in his opening brief that the trial court ordered that gang evidence not be adduced at trial does not adequately reflect the trial

19

court's findings as to the gang evidence. During the trial, the prosecutor discovered new evidence that the victim was afraid of defendant because of his gang membership. Defense counsel was additionally on notice that the victim's gang membership could be admitted. Defense counsel decided not to voir dire the jury on gangs despite knowledge such evidence could be admitted during the trial. As in *Mora and Rangel,* "Defense counsel's . . . tactical decision to avoid gang voir dire was made with full awareness of the possibility that some gang evidence could be introduced, and its eventual introduction does not transform that tactical choice into error." (*People v. Mora and Rangel*, *supra*, 5 Cal.5th at p. 505.) Defendant's counsel was aware of the potential gang evidence being adduced during trial and chose not to voir dire the jury. Defendant cannot now claim error and the trial court properly denied the motion for mistrial.

Further, the trial court did not err by admitting the evidence. Here, the fact that the victim did not truthfully testify about the shooting at the beginning of trial, because she was afraid of defendant, and because she believed he was a member of a gang, was highly relevant to her credibility. The jury was made aware that the victim initially told the police defendant had shot at her, but changed her testimony at the preliminary hearing and at the beginning of trial. She then changed her testimony midtrial to identify defendant as the shooter. The fact that the victim revealed to Investigator Lazano that the reason she was reluctant to testify was because she was afraid of defendant was highly relevant to bolster her credibility.

Defendant insists that this evidence was cumulative to other evidence that explained why the victim changed her testimony. Defendant relies on *People v.*

20

*Cardenas* (1982) 31 Cal.3d 897. In *Cardenas*, the defendant contended that the trial court erred by admitting evidence of his gang membership. The California Supreme court found, "The probative value of the gang membership evidence was minimal at best. The evidence was offered to establish possible bias of the defense witnesses in favor of [the defendant]. The prosecution sought to prove that the witnesses and [the defendant] 'live[d] in the same neighborhood' and 'had the same circle of friends.' However, these facts had already been amply established by other testimony before the prosecutor began his inquiries into the witnesses' gang affiliations. All of the defense witnesses testified that they were friends of [the defendant] and lived in the same neighborhood as he. Each of the male witnesses and [the defendant] also belonged to the San Gabriel Valley Boys Club where they played basketball." (*Id.* at p. 904, fn. omitted.) The court concluded that the evidence had limited "probative value" and "its admission created a substantial danger of undue prejudice" based on the "real danger that the jury would improperly infer that appellant had a criminal disposition." (*Id.* at pp. 904-905.) The court concluded that the admission of the gang evidence was an abuse of the trial court's discretion under Evidence Code section 352. (*Cardenas*, at p. 905.)

Here, defendant contends the evidence of his gang membership was cumulative to the evidence that defendant had abused the victim in the past, he gave her a hard time when she was with other men, and there was a protective order against defendant. As such, the additional evidence that the victim believed he was in a gang and she was afraid was not necessary to bolster her credibility. This fails to recognize the additional testimony from the victim that she still cared about defendant and that they had a good

21

relationship. The jury could believe from this testimony that she really did not recall what happened that night. The fact she admitted that she was scared and did not want to testify against defendant because she believed he was a gang member was the only concrete evidence of why she changed her testimony, and was highly relevant to bolster her credibility.

Finally, defendant has not shown prejudice. Defendant contends the admission of the evidence and the denial of a mistrial violated his federal Constitutional rights to due process and was prejudicial, requiring reversal of his convictions. Specifically, he claims that the lack of voir dire on gang membership precluded him from having an unbiased and impartial jury. "We review evidentiary errors for prejudice by determining whether it was reasonably probable that a jury would have returned a more favorable verdict for defendant had the court not admitted the evidence." (*People v. Felix* (2019) 41 Cal.App.5th 177, 187, citing to *People v. Watson* (1956) 46 Cal.2d 818, 836.) "[T]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*." (*People v. Partida* (2005) 37 Cal.4th 428, 439.) "Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test." (*Ibid*; see also *People v. Coneal*, *supra*, 41 Cal.App.5th at p. 972.) Here, defendant's trial was not fundamentally unfair, and it is not reasonably probable the verdict would have been more favorable to defendant if the gang evidence had been excluded.

Initially, the jury was admonished not to consider the victim's testimony that she believed defendant was a gang member as truth. They were advised, "There is no

22

evidence that the defendant is in a gang. That testimony is offered to show the—or the victim's state of mind that she believed he was in a gang. You are not to consider that for the truth of the matter asserted that defendant was in a gang. Only that she believed that he was in a gang."

We must presume the jurors followed the instruction given by the trial court that they were not to consider the victim's testimony for the truth that defendant was a gang member and therefore had a criminal disposition or bad character. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1234.)

Moreover, the evidence was strong that defendant was the shooter.[4] There was evidence a shooting occurred in that bullet holes were found in items in the laundry room and a bullet casing was found outside. A neighbor heard a gunshot that night. GPS coordinates showed that defendant had been at the victim's home that night. Additionally, defendant was found one mile away from the victim's house after the shooting. He had gunshot residue on his hands. The additional fact that the victim was afraid to testify against defendant because she believed he was a gang member did not improperly influence the jury. Defendant has failed to show prejudice from the admission of the evidence or the denial of his mistrial motion.

---

**4** Defendant's defense was that he was not the shooter and that Dominguez fired the shot.

**DISPOSITION**

We affirm the judgment in its entirety.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.