Filed 3/29/24  P. v. Wilburn CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DONTAE ALFONSO WILBURN,<br><br>Defendant and Appellant. | C098256<br><br>(Super. Ct. No. STKCRFE20200004228) |

A jury convicted defendant Dontae Alfonso Wilburn of murder.  On appeal, defendant argues the jury instructions on murder did not require the People to prove the absence of provocation, heat of passion, and unreasonable self-defense.  He further argues, and the People properly concede, that the abstract of judgment should be corrected to show an additional day of custody credit.  We will affirm the judgment and direct the trial court to correct the abstract.

## I.  BACKGROUND

The information alleged defendant murdered R.H. and that he used a car as his weapon.  (Pen. Code,[1] §§ 187, subd. (a), 12022, subd. (b)(1).)  The information also

---

[1]  Undesignated statutory references are to the Penal Code.

1

alleged defendant had a prior conviction that was both a strike and a serious prior felony. (§§ 677, subd. (a), 1170.12, subd. (b).)

On the day of the murder, defendant and K.W. went to the grocery store. M.H. and her husband, R.H., went to the same grocery store. As the four were walking back to their cars in the parking lot, R.H. and defendant got into an argument.

While she was putting away her groceries, M.H. saw defendant's car driving down the traffic lane behind her car and heard more arguing. One witness heard R.H. say, "Bitch ass mother fucker, get out of the truck. I will whoop your ass."

Defendant drove his car to where R.H. was standing. K.W., who was in defendant's car, testified defendant stopped near R.H. and the arguing continued. R.H. hit the side passenger window of defendant's car with his hand.

Defendant drove off, circled the parking lot again, and returned to R.H. According to K.W., defendant drove off a third time and returned to R.H. who was standing in the middle of the parking lot.

At this point, defendant accelerated toward M.H. and R.H. R.H. stepped out into the traffic lane and defendant's car struck him. One witness said defendant slammed on the brakes after he hit R.H., let R.H. tumble to the ground, and then ran R.H. over with his car. The People presented a video of defendant's car hitting R.H.[2] R.H. died from blunt force injury.

Defendant testified that as they left the store, defendant asked R.H. if there was a problem. R.H. responded with, "What did you say motherfucker" and started cussing.

---

[2] In the video, R.H. and M.H. are standing at the back of their car with a grocery cart. M.H. appears to be attempting to convince R.H. to get in the car. R.H. pushes her away, steps out in front of the defendant's car, and walks toward it. Defendant drives his car right into R.H. causing him to go onto the hood of the car. The video does not show what happens again until it shows R.H. on the ground. It appears R.H. was pushed or dragged the distance of the width of five to six parking stalls from where the initial collision occurred.

Defendant got into his car and drove down the traffic lane where R.H. was parked. Defendant testified R.H. started saying things like get out of the car and he will whoop defendant. R.H. also pounded on defendant's car with his hand.

Defendant sped away but returned to get R.H.'s license number for insurance purposes. Defendant testified R.H. came toward him. Defendant testified he was frightened, so he sped up and tried to drive around R.H. Defendant hit R.H. with his car, panicked, and drove home.

During trial, the trial court instructed the jury on murder with CALCRIM Nos. 520 and 521. As to the lesser included charge of manslaughter based on sudden quarrel or heat of passion, the court instructed the jury with CALCRIM Nos. 570 and 571.

In reading CALCRIM No. 520, the trial court instructed the jury "[defendant] is charged with murder. To prove that [defendant] is guilty of this crime, the People must prove that, one, [defendant] committed an act that caused the death of another person. Two, when [defendant] acted, he had a state of mind called malice aforethought. And three, he killed without lawful justification. There are two kinds of malice aforethought. Express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] [Defendant] had express malice if he unlawfully intended to kill. [Defendant] had implied malice if, one, he intentionally committed the act. Two, the natural and probable consequences of the act were dangerous to human life. [¶] Three, at the time he acted he knew his act was dangerous to human life. And four, he deliberately acted with conscious disregard for human life. Malice aforethought does not require hatred or ill will towards the victim. It is a mental state that must be formed before the act that causes death is committed and does not require deliberation or the passage of any particular period of time. If you find [defendant] guilty of murder, it is murder of the second-degree."

The trial court continued with CALCRIM No. 521 informing the jury the "People have the burden of proving beyond a reasonable doubt that the killing was first-degree

murder, rather than a lesser crime. If the People have not met this burden, you must find [defendant] not guilty of murder, and the murder is second-degree murder."

On the claim of imperfect self-defense and heat of passion or provocation, the trial court read the jury CALCRIM Nos. 522, 570, and 571. As to imperfect self-defense, the trial court instructed the jury, "A killing that would otherwise be murder is reduced to voluntary manslaughter if [defendant] killed a person because he acted in imperfect self-defense -- or imperfect defense of another." Further, the court described the elements of imperfect self-defense and concluded that instruction by telling the jury, the "People have the burden of proving beyond a reasonable doubt that Defendant was not acting in imperfect self-defense or imperfect defense of another. If the People have not met this burden, you must find [defendant] not guilty of murder."

The trial court used CALCRIM No. 522 to define provocation for the jury: "Provocation may reduce a murder from first-degree to second-degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. If you conclude [defendant] committed murder, but was provoked, consider the provocation in deciding whether the crime was first or second-degree murder. [¶] Also, consider the provocation in deciding whether [defendant] committed murder or manslaughter."

The trial court then instructed the jury, "A killing that would otherwise be murder is reduced to voluntary manslaughter if [defendant] killed someone because of a sudden quarrel or in the heat of passion." The trial court followed this up with a description of the elements of sudden quarrel or heat of passion and again instructed the jury, the "People have the burden of proving beyond a reasonable doubt that [defendant] did not kill as a result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find [defendant] not guilty of murder."

The jury found defendant guilty of first degree murder and found true that he used his car as a weapon. (§§ 187, subd. (a), 12022, subd. (b)(1).) The trial court found the

4

strike conviction true.  The trial court sentenced defendant to an indeterminate sentence of 25 years to life on the murder, doubled due to his strike (§ 1170.12, subd. (b)), plus a consecutive one-year term for the use of the weapon (§ 12022, subd. (b)(1)).  The trial court imposed a five-year term for the prior serious felony conviction but stayed that sentence.

Defendant filed a timely notice of appeal.

## II.  DISCUSSION

### A.  Jury Instructions

Defendant first argues the "jury instructions on murder misstated the law on provocation and unreasonable self-defense and did not require the prosecution to prove the absence of provocation, heat of passion, and unreasonable self-defense." (Capitalization omitted.)  We disagree.

We review claims of instructional error de novo.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

Based on *Mullaney v. Wilbur* (1975) 421 U.S. 684, *People v. Schuller* (2023) 15 Cal.5th 237 (*Schuller*), and *People v. Rios* (2000) 23 Cal.4th 450, defendant starts with the premise that where imperfect self-defense, provocation, and heat of passion are at issue, the People must prove the absence of those circumstances to secure a conviction of murder.  We agree with the parties that the People had the burden to demonstrate beyond a reasonable doubt the absence of heat of passion and imperfect self-defense to convict defendant of murder.  (*Mullaney v. Wilbur*, *supra*, at p. 704; *Schuller, supra*, at pp. 253-254; *Rios*, *supra*, at pp. 462-463.)

From this basic premise, defendant asserts the murder instruction was improper because it did not, in and of itself, require the People to prove the absence of heat of passion and imperfect self-defense as an element of murder.  This is where our agreement with defendant ends.

5

Rather than examine the single jury instruction on murder in isolation, we must view the claim of error by examining the jury instructions as a whole. (*People v. Serrano* (2022) 77 Cal.App.5th 902, 909.) On this point, the trial court here instructed the jury, "Pay careful attention to all of these instructions, and consider them together." When we examine the instructions in this light, we conclude the instructions accurately state the law.

In *Schuller*, the defendant was convicted of murder. (*Schuller*, *supra*, 15 Cal.5th at p. 250.) On appeal, our Supreme Court concluded the trial court erred because there was substantial evidence to support the theory that the defendant acted in imperfect self-defense, but the trial court did not instruct the jury on imperfect self-defense. (*Id.* at p. 243.)

In concluding this was error, our Supreme Court stated, " 'Generally, the intent to unlawfully kill constitutes malice.' [Citation.] However, California law recognizes two circumstances where 'a finding of malice may be precluded, and the offense limited to manslaughter, even when an unlawful homicide was committed with intent to kill' [citation]: (1) when a person kills ' " 'in a "sudden quarrel or heat of passion" [citation], or . . . [(2) when a person] kills in "unreasonable self-defense" — the unreasonable but good faith belief in having to act in self-defense [citations].' " ' [Citation.] 'These mitigating circumstances reduce an intentional, unlawful killing from murder to voluntary manslaughter "by *negating* the element of malice that otherwise inheres in such a homicide [citation]." ' [Citation.] The circumstance at issue in this case, imperfect self-defense, 'obviates malice because that most culpable of mental states "cannot coexist" with an actual belief that the lethal act was necessary to avoid one's own death or serious injury at the victim's hand.' " (*Schuller*, *supra*, 15 Cal.5th at p. 252.) The court went on to explain "the relationship between murder and voluntary manslaughter — and more specifically the relationship between murder and unreasonable self-defense — is somewhat 'unique' in our criminal law." (*Id.* at p. 253.) "While 'closely resembl[ing]

6

an affirmative defense' [citation], imperfect self-defense is 'not a true defense; rather, it is a shorthand description of one form of voluntary manslaughter. And voluntary manslaughter . . . is not a defense but a crime . . . .' " (*Ibid.*) Thus, whenever imperfect self-defense is at issue in a murder case, the People must prove the absence of that circumstance beyond a reasonable doubt to establish the element of malice. (*Id.* at p. 254.) The Supreme Court noted, "California's standard jury instructions on voluntary manslaughter include this requirement. (CALCRIM Nos. 570, 571.)" (*Schuller*, at p. 254.)

These are precisely the instructions the trial court used in this case, and those instructions accurately state the law. The trial court started with the basic instruction of the elements of the crime of murder including that the prosecution had to establish beyond a reasonable doubt that defendant killed with the state of mind of malice aforethought. The trial court instructed the jury the People had "the burden of proving beyond a reasonable doubt that the killing was first-degree murder, rather than a lesser crime. If the People have not met this burden, you must find [defendant] not guilty of murder, and the murder is second-degree murder." Moreover, when it came to provocation, heat of passion and imperfect self-defense, the trial court used the instructions acknowledged by the *Schuller* court to be the proper statement of law as to each doctrine. These instructions informed the jury that murder can be reduced to voluntary manslaughter if the defendant killed the person based on imperfect self-defense, or upon sudden quarrel or heat of passion.[3] More importantly, the instructions informed the jury the People had the burden of proof to establish defendant was not acting in imperfect self-defense or upon sudden quarrel when he killed the victim.

---

[3] We reject defendant's argument the trial court's instruction that the jury "consider provocation in deciding whether defendant committed murder or manslaughter" somehow shifted the burden of proof to the defense. As noted in the text, the jury instructions here identified the People as the party with the burden of proof.

7

Specifically, the trial court directed the jury to acquit the defendant of murder if the People failed to meet its burden. Thus, read as a whole, the instructions properly advised the jury on the element of malice aforethought and properly placed the burden of proof on the People to prove beyond a reasonable doubt the absence of these circumstances.

Defendant also postulates the instructions impermissibly stated manslaughter based on imperfect self-defense, provocation, or heat of passion reduce what would have been murder to a lesser crime. But that is precisely what the existence of those circumstances does. (*People v. Barton* (1995) 12 Cal.4th 186, 203 ["voluntary manslaughter is a lesser offense necessarily included in the crime of murder"].) While the presence of imperfect self-defense or heat of passion precludes a finding of malice (and in that sense their absence constitutes an element of the crime of murder), the People must prove the nonexistence of these circumstances that "limit" or reduce the offense of murder to manslaughter, a lesser crime than murder. (*Schuller*, *supra*, 15 Cal.5th at p. 252.) There is no error here.

Defendant cites scholarly articles which argue jurors do not necessarily understand the instructions they receive from a court. But it is a fundamental premise of our jury system that, absent something in a particular record showing to the contrary, we must presume a jury understands and obeys any given instruction and correlates it with all other instructions. (See *People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.) Defendant's extrajudicial studies, having not been introduced into evidence, are not properly before us. "The study's findings were not litigated in the trial court, so they have never been the subject of any sort of adversarial testing that would afford us insight into either the methodology employed or the ultimate accuracy or significance of the results." (*People v. Hardin* (Mar. 4, 2024, No. S277487) 2024 Cal. Lexis 1076, at pp. *50-51.) Moreover, defendant has pointed to nothing in the record to demonstrate that the jury did not understand or obey the instructions.

8

*B.  Custody Credits*

Defendant argues he is entitled to an additional day of custody credit.  The People agree, as do we.  The abstract of judgment shows defendant had 1,046 actual days of credit but shows his total custody credits as 1,045 days.  The former number is correct.  We shall order the abstract corrected.  We may correct this error on appeal.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## III.  DISPOSITION

The judgment is affirmed.  The clerk of the trial court is directed to prepare a corrected abstract of judgment stating the correct custody credits of 1,046 days of total credit and forward a certified copy to the Department of Corrections and Rehabilitation.

/s/_____
Wiseman, J.*

We concur:

/s/_____
Earl, P. J.

/s/_____
Krause, J.

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.